[Civ. No. 14838.  First Dist., Div. Two.  Mar. 21, 1952.]

ARTHUR McKINNEY, Appellant, v. CITY AND COUNTY
OF SAN FRANCISCO, Respondent.

Belli, Ashe & Pinney and Walter E. Trefts for Appellant.

Dion R. Holm, City Attorney, and Thomas M. O'Connor, Deputy City Attorney, for Respondent.

NOURSE, P. J.—Plaintiff sued for damages for personal injuries incurred while feeding a polar bear at the San Francisco Zoological Gardens. The trial court granted defendant's motion for a directed verdict and plaintiff appeals.

The zoological gardens is owned and operated by the city and county as a part of its park system and is under the supervision and control of the City Park and Recreation Department. Entrance to it is free to the public. In it the city maintained two polar bears in a cage 50 by 100 feet. The distance between the bars of the cage in which the bears were confined is 3 inches. Three feet and 11 inches outside the bear cage a fence was constructed. It consisted of a railing 4 feet from the ground, below which, extending to the ground was a heavy steel wire mesh; above the railing were three strands of galvanized wire 7 inches apart.

In feeding sugar to one of the polar bears plaintiff, according to his own testimony, leaned with his right shoulder over one of the protective wires and moved his right hand near to the cage; when later he demonstrated this movement at the time the jury viewed the scene, he brought his hand within 4 or 6 inches from the cage. His testimony is that the bear grabbed his arm with its right paw and swept his hand into its mouth, which was just against the bars; the bear then pulled hand and arm into the cage pulling plaintiff over the railing. Hand and arm were severely bitten.

The director of the zoo testified that the polar bear could not put his claws outside the cage more than 6 inches and only sideways and that the claws of a bear are dull and nonretractile, so that bears cannot grab and hold on with their claws like a cat. Said character of the bear's claws is a fact of general knowledge. It is therefore doubtful whether the accident can have happened in the manner described by plaintiff, and whether plaintiff did not bring his hand within direct reach of the bear's mouth, which according to plaintiff's own testimony, could not get outside the bars. However as the appeal is from a judgment on a directed verdict we shall for the purpose of this opinion accept plaintiff's testimony about the manner in which the accident happened as true. Even so we have come to the conclusion that the case was correctly taken from the jury.

In the operation of the zoo as a part of the public park and playground facilities the city was engaged in a governmental capacity. With respect to parks and play-

grounds as such it has been so held in *Kellar* v. *City of Los Angeles*, 179 Cal. 605, 609 [178 P. 505], and *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 152 [108 P.2d 989] as referable to the duty of maintaining public health; the governmental character of the operation of a miniature railroad in the "Fleishhacker Playgrounds" was decided by this court in *Meyer* v. *San Francisco*, 9 Cal.App.2d 361, 363 [49 P.2d 893]. ▪ It is true that the same does not necessarily apply to everything a city maintains in a public park. In *Rhodes* v. *City of Palo Alto*, 100 Cal.App.2d 336, 341 [223 P.2d 639], it was held that the operation of a community theater, situated in a public park was a proprietary activity, the court reasoning that it is the nature of the activity, not its location, nor by what department carried on, that determines its character. However, the purpose of the maintenance of public zoological gardens is the instruction and recreation of the people and the advancement of science (reasons given for the establishment by act of Congress of the National Zoological Park [*Jackson* v. *Baker*, 24 App. D.C. 100, 103]). In *Chafor* v. *City of Long Beach*, 174 Cal. 478, 487 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685], both the preservation of public health and the education of the young are mentioned as delegated functions of sovereignty in the exercise of which the municipality under the common law is protected from liability. We have therefore concluded that in this state the maintenance by a municipality of public zoological gardens must be considered a governmental activity, both from the point of view of healthful recreation and of education and that the liability for injuries arising from such operation should normally be based on the Public Liability Act of 1923 (Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619) in force at the time of the injury (March 4, 1949), now replaced by section 53051, Government Code. The act read: "§ 2. Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiv-

ing such notice, to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

The act imposes liability for injury only when caused by a dangerous or defective condition together with failure to remedy it within a reasonable time after knowledge or notice of its dangerous character is obtained (*Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 811 [155 P.2d 633]). ▮ The evidence in this case showed without conflict, that the bear which caused the injuries had been kept in the same cage under the same conditions as those existing on the day of the injury for the six preceding years; that before said injury no accident at the bear cage had ever been reported although the zoo had been visited by an average of 50,000 persons a week; that the nonretractile character of the bear's claws and the distance it could move its paws sideways through the bars limited a possibly unsafe zone to less than 6 inches outside the bars of the cage, whereas the fence described above kept the visitors at a distance of 3 feet, 11 inches from the bars and was a clear warning for them not to move any part of their bodies into close proximity of the bear cage itself. It even made it impossible for a person not straining against the limitations imposed by the fence to reach the possibly dangerous zone. (Plaintiff, 6 feet tall, had an arm's reach of 31 inches, that is 10 inches less than the distance between the fence and said zone.) No intrusion of visitors into it was reasonably to be anticipated. The fact that visitors were permitted to feed the bears by throwing food in the direction of the cage cannot be considered an invitation to strain to bring hands close to it, contrary to the evident purpose of the fence. Under these circumstances it could not reasonably be held that there was a dangerous or defective condition and certainly not that the director of the zoo had knowledge or notice of its dangerous character. (*Cf. Howard* v. *City of Fresno*, 22 Cal.App.2d 41 [70 P.2d 502].)

Appellant contends that irrespective of the applicability of the Public Liability Act, the strict liability imposed on private keepers of ferocious animals (*Baugh* v. *Beatty*, 91 Cal.App.2d 786, 791 [205 P.2d 671]) applies also to a municipality even if acting in governmental capacity. As at common law the normal tort liability does not apply to such municipality, it may well be that also the strict liability for wild animals follows different rules. As only authority

for such strict liability of a city acting in governmental capacity appellant cites *City of Fort Worth* v. *Wiggins,* (Tex.Com.App.) 5 S.W.2d 761. In that case the appellate courts reversed the sustaining of a demurrer to a complaint for injuries to a child caused by a bear kept by the city in a park, which bear grabbed the child by putting its paw through the weak mesh of the cage and through a 12-inch wide opening in an outer fence. Both negligence and the creation of a public nuisance were alleged. The highest court held in substance that in Texas the maintenance of a park should be considered a proprietary function but that if the function were considered governmental there would nevertheless be liability for the creation of a public nuisance. The latter part of the decision is in accord with what is considered the majority view of the courts, to wit: "that the immunity of municipal corporations from liability for acts done in the performance of governmental functions does not extend to cases of personal injuries or death resulting from a nuisance created or maintained by a municipality, and that a municipality is liable for such injuries, althougḥ the nuisance was created or maintained in the course of the discharge of public duties or governmental functions." (Ann. 75 A.L.R. 1196, 1199; for nuisances in municipal parks see Ann. 99 A.L.R. 686, 696; 142 A.L.R. 1340, 1372.) The keeping of ferocious animals is sometimes treated as a nuisance (see, over and above the case cited, the dissenting opinion in *Hibbard* v. *City of Wichita,* 98 Kan. 498 [159 P. 399, 400, L.R.A. 1917A 399] and 3 C.J.S. 1244, Animals § 143c.)

In our case there is no express allegation of the maintenance of a nuisance but moreover there is still the question whether the keeping of ferocious animals by a municipality in a governmental capacity is to be considered as a nuisance *per se* for which strict liability exists independent of the careful manner of the keeping or whether such keeping is only a public nuisance when done in a manner which actually causes a public danger. The City of Fort Worth case, *supra,* does not decide that point as an actually defective and dangerous condition was alleged. However in *Guzzi* v. *New York Zoological Soc.,* 192 App.Div. 263 [182 N.Y.S. 257], affirmed 233 N.Y. 511 [135 N.E. 897], it was held that the defendant society, which maintained the Bronx zoo under legislative authority and in a safe and suitable manner, was not on the basis of absolute liability liable for injury to a girl who intentionally crept under the cage of a bear, and that the well

fenced cages did not constitute a nuisance *per se*, "where the animals were maintained as a public enterprise under legislative authority for educational purposes and to entertain the public." ▇ If the common law nuisance exception to governmental immunity applies also in California with respect to the keeping of ferocious animals—there are no decisions in point—then *Guzzi* v. *New York Zoological Soc.*, *supra*, ought to be followed with respect to municipalities acting in governmental capacity and their liability restricted to situations where an actually dangerous condition constitutes a public nuisance. Where in our analysis regarding the Public Liability Act we have decided that no actually dangerous condition could be held to have existed, there is certainly no room for a dangerous condition amounting to a public nuisance, even if we disregard the lack of allegation to that effect.

Judgment affirmed.

Goodell, J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied April 19, 1952.