MOLONEY, A MINOR, APPELLEE, *v.* CITY OF COLUMBUS, APPELLANT.
MOLONEY, APPELLEE, *v.* CITY OF COLUMBUS, APPELLANT.

(Nos. 39038 and 39039—Decided June 9, 1965.)

*Mr. Gordon E. Williams, Mr. Lewis A. Rankin* and *Mr. Jim Booker,* for appellees.

*Messrs. Power, Griffith, Jones & Bell, Mr. John C. Young,* city attorney, and *Mr. W. N. Postlewaite,* for appellant.

HERBERT, J. Recovery of damages for Nonnie Moloney, mother of the injured minor herein, is predicated upon a determination by this court that the petition of such minor does state a cause of action against the defendant herein. The two actions may, therefore, be consolidated for the purposes of appeal. Hence, only a single amended petition will be referred to herein.

The issue before this court is whether the Court of Appeals erred in reversing the judgment of the Court of Common Pleas which sustained the defendant's demurrer to the amended petition.

The amended petition reads, in pertinent part, as follows:

"3. Plaintiff further states that on the 29th day of June, 1958 * * * the defendant occupied, maintained and controlled the zoological park known as the Columbus Zoo and located adjacent to O'Shaughnessy Dam, Delaware County, Ohio; that on said date the Columbus Zoo maintained a large collection of wild animals which were on exhibit and display to members of the general public upon the presentation of a zoo membership card or upon the payment of an admission fee.

"4. Plaintiff further states that on the 29th day of June, 1958, during the afternoon hours, she and several of her companions, accompanied by her uncle, Edmund Moloney, had been admitted to said zoo as business visitors and had approached a so-called barn-yard exhibit in which an animal known as a guano or guanco was on exhibit; that said barn-yard was enclosed by a wire fence with large openings therein; that said openings were of a sufficient size to permit a child to insert an entire hand through an opening; that the plaintiff observed said animal

being fed grass by other members of the public on said premises and that thereafter she attempted to do the same. That as she put her arm and hand through an opening in the fence in an attempt to feed said animal; said animal without any warning grabbed her hand in its mouth and bit, larcerated and bruised the flesh of the plaintiff's right hand thereby causing the injuries and damages hereinafter more fully described.

"5. Plaintiff further states that defendant was negligent and had created and was maintaining a nuisance upon the public grounds aforesaid in failing to have a guard present and to prevent said child from feeding said animal aforesaid; in failing to furnish a fence of such character that children would be unable to insert their hands and arms through said fence in an effort to feed said animal, in failing to warn the persons about the premises and particularly the plaintiff of the dangers and hazards incident to an attempt to feed said animal, and in negligently failing to abate said nuisance after having created the same. Plaintiff states that as a direct and proximate result of the foregoing acts, she sustained the injuries and damages hereinafter more fully described."

An examination of the record discloses two questions for this court's determination: (1) Whether the defendant is liable for its tortious conduct in operating and maintaining a municipal zoo, and (2) whether the allegations of the amended petition are sufficient to state a cause of action against the defendant.

A municipality may, in a proper case, be held liable for damages resulting from its tortious acts, just like a private corporation. 63 Corpus Juris Secundum 29 *et seq.*, Municipal Corporations, Section 745 *et seq.* If a municipality is engaged in a proprietary function, it is liable for its tortious acts. See, *e. g.*, *Hack* v. *City of Salem* (1963), 174 Ohio St. 383 (negligence); *Eversole* v. *City of Columbus* (1959), 169 Ohio St. 205 (negligence); *Louden* v. *City of Cincinnati* (1914), 90 Ohio St. 144 (nuisance). See, also, 38 American Jurisprudence, Municipal Corporations, Sections 571, 610 and 647.

The first question thus is whether operating and maintaining a zoo by a municipality involve the exercise of a governmental or proprietary function.

The appellant urges that this question has already been decided, citing paragraph one of the syllabus in *Crisafi* v. *City of Cleveland* (1959), 169 Ohio St. 137, which states as follows:

"Lands which are owned by a municipality and kept and maintained thereby as a combined park and zoo for the use and enjoyment of the public are public grounds, and the municipality in its management and control of such public grounds acts in a governmental capacity and is not liable in such connection, unless liability is expressly imposed by statute."

The facts in the *Crisafi case* involved the liability of a municipality for damage to adjoining property owners resulting from the use of dynamite in improving public grounds, *i. e.*, a combined park and zoo. The issue before the court in *Crisafi* was whether Section 723.01, Revised Code, imposed liability upon a municipality for damages to property located *outside* the park on account of acts performed *within* the park. Damage from the maintenance and operation of a zoo were not involved. The majority opinion expressly ventures that a municipality might be liable for injuries occurring to persons within the park. The status of a *municipally owned zoo*, governmental versus proprietary, was not considered. The *Crisafi case* thus does not establish judicial precedent in this cause.

Counsel in this cause do not cite, and our independent research fails to reveal, any other decision in Ohio concerning municipally owned zoos, which would serve as judicial precedent. Accordingly, the determination of the status of a municipally owned zoo is left to our judicial interpretation. See *Hack* v. *Salem, supra*, at 387.

Counsel fail to cite any decisions from other jurisdictions to aid us in this determination. Research reveals that damages were sought from a municipality or public body for injuries resulting from wild animals in at least 14 instances.[1] An exam-

[1]*Smith* v. *City of Birmingham* (1962), 270 Ala. 681, 121 So. 2d 867 (private zoo in municipal park, delivery of wild animals to zoo by city); *Guidi* v. *State* (1953), 41 Cal. 2d 623, 262 P. 2d 3 (animal show at state fairgrounds); *McKinney* v. *City and County of San Francisco* (1952), 109 Cal. App. 2d 844, 241 P. 2d 1060 (municipally owned zoo); *Jackson* v. *Baker* (1904), 24 App. D. C. 100 (Sup. Ct.) (zoo authorized and maintained by act of U. S. Congress); *Barr* v. *District of Columbia* (1962), 202 F. Supp.

ination of those decisions which discuss governmental immunity reveals two conflicting views. The conflict among jurisdictions is noted in 38 American Jurisprudence 308, Municipal Corporations, Section 610, footnotes 19 and 20. See, also, 63 Corpus Juris Secundum 314, Municipal Corporations, Section 907, footnote 37; N. C. C. A. (N. S.) 419.

Governmental immunity was granted in *Hibbard* v. *City of Wichita, supra*, and *McKinney* v. *City and County of San Francisco, supra*. Governmental immunity was denied in *City of Fort Worth* v. *Wiggins, supra, Byrnes* v. *City of Jackson, supra, Guidi* v. *State, supra,* and *Barr* v. *District of Columbia, supra*. Also, a municipality or public body has been recognized as being liable on other grounds for injuries resulting from wild animals.'

The two decisions granting immunity reasoned that the city did not make a profit and the zoo was for the pleasure and education of the entire public; and that the zoo was for the instruction and healthful recreation of the public and for the advancement of science.

Decisions holding that the maintenance of a zoo by a municipality involved a proprietary function have reasoned either that there was no mandatory duty to maintain a zoo either as a matter of law or for the public's education or that prior decisions demanded that a zoo be classified as proprietary or that

---

260 (D. C.) (municipally owned animal); *Hibbard* v. *City of Wichita* (1916), 98 Kan. 498, 159 P. 399 (municipally owned zoo); *Byrnes* v. *City of Jackson* (1925), 140 Miss. 656, 105 So. 861, 42 A. L. R. 254 (municipally owned zoo); *Guzzi* v. *New York Zoological Society* (1920), 192 App. Div. 263, 182 N. Y. Supp. 257, affirmed, 233 N. Y. 511, 135 N. E. 897 (state owned zoo); *Hyde* v. *City of Utica* (1940), 259 App. Div. 477, 20 N. Y. Supp. 2d 335 (municipally owned zoo); *City of Mangum* v. *Brownlee* (1938), 181 Okla. 515, 75 P. 2d 174 (municipally owned zoo); *City of Tonkawa* v. *Danielson* (1933), 165 Okla. 241, 27 P. 2d 348 (bear in cage on vacant lot maintained by city); *City of Fort Worth* v. *Wiggins* (1928), 5 S. W. 2d 761 (Tex. Civ. App.) (municipally owned zoo); *Bormann* v. *City of Milwaukee* (1896), 93 Wis. 522, 67 N. W. 924 (municipally owned zoo); *Little, Admr.,* v. *City of Madison* (1880), 49 Wis. 605, 6 N. W. 249 (animal exhibit licensed by city).

²*City of Mangum* v. *Brownlee, supra* (absolute liability); *City of Tonkawa* v. *Danielson, supra* (absolute liability); *Guzzi* v. *New York Zoological Society, supra* (negligence only); *Jackson* v. *Baker, supra* (negligence only); *Bormann* v. *City of Milwaukee, supra* (negligence); *Guidi* v. *State, supra* (state participation in activity).

the rule of governmental immunity was inapplicable to a nuisance based on a dangerous animal.

From the above 14 cases, it must be said that the weight of authority allows suit against a municipality for injuries resulting from wild animals. Only one decision, by a divided court, absolutely denied recovery under any theory. *Hibbard* v. *Wichita, supra.*

Of the two decisions which granted governmental immunity to a municipal zoo, it is doubtful whether one of those decisions, *McKinney* v. *San Francisco, supra,* is controlling in that state in view of the fact that it is a lower-court decision and the Supreme Court of that state has subsequently abolished the doctrine of governmental immunity. See *Muskopf* v. *Corning Hospial District* (1961), 55 Cal. 2d 211, 359 P. 2d 457.

The distinction between proprietary and governmental functions in Ohio was stated, as follows, by Chief Justice Marshall in *City of Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, at page 284:

"In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving peace and health of citizens and protecting their property, it is settled that the function is governmental * * *. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary.

"Another familiar test is whether the act is for the common good of all of the people of the state, or whether it relates to special corporate benefit or profit. In the former class may be mentioned the police, fire and health departments, and in the latter class utilities to supply water, light, and public markets." Cited with approval in *Hack* v. *Salem, supra.*

Applying the above tests, we find that there is no obligation upon the defendant to maintain a zoo (see Sections 307.02 and 307.76, Revised Code), the defendant maintains such zoo

largely for the comfort and convenience of its citizens, it is indirectly compensated through its growth and increased prosperity, and the benefits realized through the maintenance of the zoo inure primarily to the defendant and its inhabitants and not to the state and its citizenry as a whole. Further, the benefits realized through the maintenance of the zoo inure primarily to those citizens who are interested in that activity and who are willing to pay an admission fee either by paying a cash fee upon admittance or purchasing a membership card, and those citizens who either do not possess or are unwilling to pay an admission fee are excluded from the benefits.

As recently stated by Judge Zimmerman, "it is impossible to reconcile all the decisions of this court dealing with the subject of governmental * * * [immunity]." *Eversole* v. *City of Columbus, supra*, at 208. We think, however, that our determination here that the maintenance of a zoo by a municipality involves the exercise of a proprietary function conforms with our previous determinations that the maintenance of an arts and crafts center (*Eversole* v. *City of Columbus, supra*) and a swimming pool (*Hack* v. *Salem, supra*) involves the exercise of a proprietary function. Accord, *Byrnes* v. *City of Jackson, supra* (municipal zoo held proprietary); *Columbia* v. *Wilks* (Miss. 1936), 166 So. 925 (walk by municipal swimming pool held proprietary).

Counsel for defendant have argued at considerable length that a municipality is liable, under Section 723.01, Revised Code, only for negligent acts or nuisances which occur "within the municipal corporation," and, since the zoo is located outside the municipal corporate limits, no liability attaches.

The above section delineates certain instances where a municipality may be held liable for its negligent acts and/or for creating a nuisance *when performing* a governmental function. See *Osborn* v. *City of Akron* (1960), 171 Ohio St. 361, at 363. In the instant case, having determined that the defendant was engaged in a proprietary function, we hold that the above Code section is inapplicable. The above argument is, therefore, not germane to the issue before this court.

There remains the question as to whether the amended petition in this cause properly states a cause of action

This appeal is from a judgment dismissing the action following the sustaining of a demurrer. This court is, therefore, guided by the rule that the petition must be liberally construed favorable to the plaintiff. See *Hack* v. *Salem, supra,* at 389, and authorities cited therein.

Appellant, having demurred to the amended petition, admits the following allegations of fact:

The defendant maintained a large collection of wild animals; these animals were on exhibition; the animal causing the injury was enclosed by a wire fence having large openings therein; the defendant failed to furnish a suitable fence; members of the public were permitted to feed such animal; there were no guards preventing the public from feeding or warning given the public not to feed such animal; and there were no signs warning the public about the hazards of feeding the animal.

We think that an examination of the amended petition reveals a cause of action, whether the underlying theory be absolute liability for injuries inflicted by wild animals, or negligence or nuisance. See, *e. g., Hack* v. *Salem, supra* (negligence); *Gaines* v. *Village of Wyoming* (1947), 147 Ohio St. 491 (nuisance); *Gottesman, Admr.,* v. *City of Cleveland* (1944), 142 Ohio St. 410 (nuisance). See, also, 4 American Jurisprudence 2d 326, Animals, Section 80; 3 Corpus Juris Secundum 1242, Animals, Section 142; 66 Corpus Juris Secundum 785, Nuisances, Animals, Section 32; annotation, 69 A. L. R. 500 (doctrine of absolute liability for injuries from wild animals).

The defendant herein urges that the amended petition is defective and does not state a cause of action in that it fails to allege that the defendant knew or should have known that the public would feed such animal, or that the animal was dangerous, or that feeding the animal was a hazard. However, the defendant, in maintaining a wild animal, was presumed to know the vicious nature of such an animal. See 4 American Jurisprudence 2d 326, Animals, Section 80. See, also, *Newman* v. *Cleveland Museum of Natural History* (1944), 143 Ohio St. 369 (keeper responsible for propensities of "tamed" wild animal).

For the above reasons, it is the opinion of this court that the defendant is engaged in a proprietary function in owning,

operating, and maintaining a zoo; that the defendant is liable for its tortious conduct in such owning, operating and maintaining; and that the amended petition does state a cause of action.

The judgment of the Common Pleas Court is reversed, the judgment of the Court of Appeals is affirmed, and the cause is remanded to the Common Pleas Court for further proceedings according to law.

*Judgments affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.