HAVERLACK ET AL., APPELLANTS, *v.* PORTAGE HOMES, INC., ET AL., APPELLEES.
RICHNER ET AL., APPELLANTS, *v.* PORTAGE HOMES, INC., ET AL., APPELLEES.

[Cite as Haverlack *v.* Portage Homes, Inc. (1982), 2 Ohio St. 3d 26.]

(Nos. 81-1683 and 81-1784—Decided December 15, 1982.)

*Messrs. Loomis, Poland, Wilson & Griffith* and *Mr. Harry L. Griffith,* for appellants in case No. 81-1683.

*Mr. R. Andrew Richner,* for appellants in case No. 81-1784.

*Mr. John H. Gibbon,* director of law, for appellee city of Aurora.

*Messrs. Williams, Zumkehr, & Welser, Mr. Benito C. R. Antognoli* and *Mr. Charles E. Zumkehr,* for appellees Walden.

CELEBREZZE, C.J. These appeals require that we review the decisions of the court of appeals to ascertain if it was correct in affirming the granting of summary judgments against the appellants. Because the facts and issues presented are similar, the cases have been consolidated.

I

The initial question for our consideration is whether summary judgments were properly granted on the ground of failure to exhaust administrative remedies. The court of appeals, in *Haverlack,* concluded that "[t]he subject matter of appellants' complaint is clearly within the province of the Environmental Protection Agency and the evidence before the court clearly in-

dicated appellants failed to exhaust their administrative remedy before said state agency."[1] For the following reasons, we conclude that it is unnecessary to exhaust administrative remedies and consequently summary judgments were improperly granted.

Appellants maintain that it is unnecessary to pursue their remedies with the EPA before filing a complaint for judicial action. They contend that pursuing the administrative process would be futile because the EPA cannot consider the issue of a nuisance and has no authority to award the money damages they seek.

Conversely, appellees contend that complaints related to pollution should be initially addressed to the EPA and that it is necessary to exhaust this administrative remedy prior to judicial action. They argue that the EPA has the necessary technical expertise to determine the existence of the alleged pollution.

We conclude that it is unnecessary for appellants to pursue administrative remedies prior to initiating judicial action. We find that R.C. 3704.09 disposes of this issue. It provides that:

"Determinations made by the director of environmental protection or other persons acting under sections 3704.03 and 3704.04 of the Revised Code shall not be used as evidence in civil actions nor create any presumption of law or finding of fact which shall inure to or be for the benefit of any person other than the state, and sections 3704.01 to 3704.07 of the Revised Code do not create, enlarge, or abrogate existing private rights. Nothing in Chapter 3704 of the Revised Code shall be construed to abridge, limit, or otherwise impair the right of any person to damages or other relief on account of injury to persons or property and to maintain any action or other appropriate proceedings therefor."

The last sentence in R.C. 3704.09 clearly provides that nothing in this chapter shall impair a person's right to damages or to maintain an action at common law. Thus, common law rights and remedies are preserved, which would include the action in the cause *sub judice* for money damages caused by nuisance.[2]

Another indication that the General Assembly intended that common law rights and remedies be preserved is found in the first sentence of R.C. 3704.09. It provides that injured parties are precluded from using the findings of the EPA in civil actions. Thus, even if a complainant pursued an administrative remedy with the EPA and was successful, he could not use that decision in a civil action. Thus, requiring appellants to pursue an ad-

---

[1] Although R.C. 3704.09 was argued, the court's opinion did not mention it.

[2] Appellees rely upon *State, ex. rel. Brown,* v. *Rockside Reclamation,* (1976), 47 Ohio St. 2d 76 [1 O.O.3d 46]. This case concerned the authority of the Attorney General to file a suit against a landfill for violation of R.C. 3767.13, a general nuisance statute. The case *sub judice* is an action for money damages brought by private individuals and concerns R.C. 3704.09. Because of these factual differences, *Rockside* is inapposite.

ministrative remedy would be costly and futile. Further support for our conclusion is found in R.C. 3704.03. This lengthy section codifies the powers of the director of the EPA, none of which includes awarding money damages.

Based upon the legislative directives in R.C. 3704.09, we hold that pursuant to this section, it is not necessary for a private citizen to seek and exhaust his administrative remedies with the EPA before initiating a civil action for money damages caused by a sewage treatment plant. Thus, summary judgments were improperly granted for failure to exhaust administrative remedies.

## II

Summary judgment was also granted to the city of Aurora in each case on the additional ground that the suit was barred by the doctrine of sovereign immunity. Appellants contend that the defense of sovereign immunity should not be available to the city.

The historical development of the doctrine of sovereign or governmental immunity of municipal corporations has been discussed in *Haas* v. *Akron* (1977), 51 Ohio St. 2d 135, 140 [5 O.O.3d 110] (William B. Brown, J., dissenting), and *Hack* v. *Salem* (1963), 174 Ohio St. 383, 391 [24 O.O.2d 34] (Gibson, J., concurring in judgment). Consequently, it is unnecessary for us to repeat this background. However, for a perspective on the current situation, it will be helpful to summarize the operation of the doctrine.

A municipal corporation has been characterized as being both a subdivision of the state and also a corporate entity. Therefore, liability for negligence, and the defense of immunity, have been dependent upon the classification of the municipal function as proprietary or governmental. Traditionally, municipal corporations have been immune from liability in the performance of their governmental functions, unless as otherwise provided by statute. See, *e.g., Broughton* v. *Cleveland* (1957), 167 Ohio St. 29 [4 O.O.2d 1]. However, the defense of immunity has not been available to a municipal corporation in the performance of proprietary functions. See, *e.g., Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157 [60 O.O.2d 113].

Attempts to classify municipal functions into these two categories have caused confusion and unpredictability in the law. "[T]he classification of particular functions of municipalities has been difficult and frequently leads to absurd and unjust consequences." *Hack, supra,* at 394. Furthermore, "it is impossible to reconcile all the decisions of this court dealing with the subject of governmental and proprietary functions in relation to a municipality." *Eversole* v. *Columbus* (1959), 169 Ohio St. 205, 208 [8 O.O.2d 167]. Thus, this "bramble bush," as described in *Hack, supra,* deserves clarification with the formulation of a definite rule of law.

Furthermore, as we consider the viability of the doctrine, we are mindful of its unjust results. Many innocent injured victims have been precluded from recovering damages from municipalities because of sovereign immunity from liability for their negligence in the performance or nonperformance of

governmental functions. Clearly, the municipality is better able to bear the cost of an injury it causes than the individual victim. The municipality should be run with the same care and circumspection as a business, protecting itself in the same manner from liability incurred by its servants. A municipality is able to obtain liability insurance and is able to spread the cost among the taxpayers.

As aptly stated by Justice William B. Brown in *Haas, supra,* "the judicially created doctrine of sovereign immunity is a legal anachronism which denies recovery to injured individuals without regard to the municipality's culpability or the individual's need for compensation." *Id.* at 145. Because Ohio's sovereign immunity for municipalities was judicially created (see *State* v. *Franklin Bank of Columbus* [1840], 10 Ohio 91; *Western College of Homeopathic Medicine* v. *Cleveland* [1861], 12 Ohio St. 375; and *Thacker* v. *Bd. of Trustees of Ohio State Univ.* [1973], 35 Ohio St. 2d 49, 67-68 [64 O.O.2d 28] [William B. Brown, J., dissenting]), it can be judicially abolished. (See *Sears, supra,* at 162.) When we considered sovereign immunity last year, we noted that only six other states adhered to the traditional common law immunity doctrines. *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 38 [21 O.O.3d 19]. *Stare decisis* alone is not a sufficient reason to retain the doctrine which serves no purpose and produces such harsh results. Therefore, we join with the other states in abrogating the doctrine.

We hold that the defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation in an action for damages alleged to be caused by the negligent operation of a sewage treatment plant. A municipal corporation, unless immune by statute, is liable for its negligence in the performance or nonperformance of its acts. To the extent that they are inconsistent with this opinion, *McKee* v. *Akron* (1964), 176 Ohio St. 282 [27 O.O.2d 197], and *Haas* v. *Akron* (1977), 51 Ohio St. 2d 135 [5 O.O.3d 110], are overruled.

Therefore, sovereign immunity is not available as a defense for the city of Aurora. Because summary judgments were improperly granted, appellants will have the opportunity to prove their allegations when the causes are remanded for trials on the merits.

Accordingly, the judgments of the court of appeals are reversed and the causes are remanded.

*Judgments reversed and*
*causes remanded.*

W. BROWN, SWEENEY and C. BROWN, JJ., concur.

LOCHER, HOLMES and KRUPANSKY, JJ., concur in part and dissent in part.

LOCHER, J., concurring in part and dissenting in part. I concur in paragraph one of the syllabus as it applies to the private defendants. Nevertheless, we should hold that issue to be moot as to the city of Aurora, because the trial court properly ruled that the doctrine of sovereign immunity bars appellants' actions. Therefore, I dissent.

The majority correctly observes that a municipality may not assert the defense of sovereign immunity in all circumstances. "* * * Since 1854, * * * this court has consistently held that * * * the defense of immunity is not available to a municipality for negligence in the performance of proprietary, as opposed to governmental, functions. * * *" *Haas* v. *Akron* (1977), 51 Ohio St. 2d 135, 136 [5 O.O.3d 110].

"The rationale behind distinguishing between governmental and proprietary functions in determining the tort liability of a municipal corporation is that in performing the former a city acts as the agent of the state in the exercise of sovereign powers. Proprietary functions are acts performed in the pursuit of private or corporate duties for the particular benefit of the corporation and its inhabitants. While performing these functions, municipalities do not act as agents of the state in the exercise of its sovereign powers and the corporation is liable for its negligent acts. *Nanna* v. *Village of McArthur* (1974), 44 Ohio App. 2d 22 [73 O.O.2d 14]; *Wooster* v. *Arbenz* [1927], *supra* (116 Ohio St. 281)." *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 36-37 [21 O.O.3d 19].

We should affirm this case, because the city of Aurora was engaged in a governmental function. "A municipal corporation is not liable to owners of adjacent lands for an alleged nuisance arising from the operation by such municipal corporation of a sewage disposal plant. (*Osborn* v. *City of Akron* [1960], 171 Ohio St. 361 [14 O.O.2d 112], approved and followed.)" *McKee* v. *Akron* (1964), 176 Ohio St. 282 [272 O.O.2d 197], paragraph one of the syllabus.

Yet, today's majority, which is the same as that which issued *Schenkolewski, supra,* casts aside the governmental-proprietary distinction because "[a]ttempts to classify municipal functions into these two categories have caused confusion and unpredictability in the law." Unfortunately, the majority's departure from this analytical framework creates, rather than dispels, "confusion and unpredictability" and may ultimately expose many political subdivisions to liability of unimagined proportions. It is easy to suggest that a political subdivision should bear the cost or obtain insurance; but today's ruling will leave municipal managers wondering what functions may give rise to liability.

Last year, for example, *Moloney* v. *Columbus* (1965), 2 Ohio St. 2d 213 [31 O.O.2d 447], was sufficient precedent for a majority of this court to find that owning and operating a zoological park is a proprietary function. See *Schenkolewski, supra.* Now, however, the majority views *McKee, supra,* which was decided a little more than one year before *Moloney,* as bad law.

The majority opinion, therefore, provides neither explanation as to why it

singled out this particular governmental function nor guidance as to what is next to fall. This will cause uncertainty in the lower courts and propagate cases needing resolution by this court.

Indeed, the majority redefines the class of activities to which the doctrine of governmental immunity applies, by stating that "* * * [a] municipal corporation, unless immune by statute, is liable for its negligence in the performance or nonperformance of its acts." This change occurs without reason or reference to *Haas, supra,* in which we observed, at page 136: "Except as otherwise provided by statute, municipal corporations are immune from liability in the performance of their governmental functions. See, *e.g., Broughton* v. *Cleveland* (1957), 167 Ohio St. 29 [4 O.O.2d 1]."

Ultimately, it will be necessary for this court to reconcile the apparently narrow wording of the syllabus with the broad language of the opinion. Although the syllabus seems limited to "the negligent operation of a sewage treatment plant," the opinion speaks broadly: "* * * [W]e join with the other states in abrogating the doctrine."

This case obscures the law instead of clarifying it. What the majority views as having been a "bramble bush" is now a thicket.

Accordingly, I dissent and would affirm the holding of the court of appeals that the doctrine of governmental immunity bars appellants' suits against the city of Aurora.

HOLMES and KRUPANSKY, JJ., concur in the foregoing concurring and dissenting opinion.