HENRY ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* CITY OF AKRON, APPELLANT AND CROSS-APPELLEE.

(Nos. 11999 and 12014 — Decided October 23, 1985.)

*Paul E. Weimer,* for the Henrys.

*R.E. Rubinstein,* for Prudential Insurance Company.

*Max Rothal,* assistant city prosecutor, for the city of Akron.

BAIRD, J. This cause came on before the court upon the cross-appeal of the David Henry family and the appeal of the city of Akron from the trial court's order awarding the Henry family $165,500 against the city of Akron. We affirm.

This case arose out of the explosion of methane gas which had escaped from the Hardy Road landfill operated by the city of Akron. The explosion completely destroyed the Henry home. The city admitted liability for the explosion; a trial was held to determine the extent of the family's damages. In addition, the city of Akron filed an appropriation action in which the value of the Henry property was disputed. In that action, the jury awarded the Henrys $57,200. This verdict is not contested here.

In the matter of damages resulting

from the explosion, the jury awarded the Henrys a total of $165,500. Of this award, $38,500 was to reimburse the family for personal property lost in the explosion and subsequent fire. This award is not in dispute; however, the city appeals the remainder of the judgment. The Henrys dispute the trial court's dismissal of their claim for attorney fees and punitive damages.

### The Henrys' Cross-Assignments of Error

"I. The trial court erred in refusing to allow the jury to consider reasonable attorney fees and costs as a component of plaintiffs' compensatory damages.

"II. The trial court erred in striking plaintiffs' claim for punitive damages."

The trial court's action amounted to the dismissal of plaintiffs' claim for attorney fees and punitive damages. In order to affirm the dismissal of these claims, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. * * * " *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O. 2d 223], syllabus. We find that the trial court correctly ruled that neither attorney fees nor punitive damages could be awarded against a municipal corporation.

Historically, the common-law doctrine of municipal immunity precluded liability on the part of a municipal corporation for its negligent conduct of governmental functions. However, this concept was abrogated by the Ohio Supreme Court in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, and its progeny, *e.g.*, *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31. The rationale behind the "abolition"[1] of common-law municipal immunity is the inequity of forcing an innocent victim to bear the expense of injury due to the negligence of a municipal corporation. *Enghauser, supra,* at 34; *Haverlack, supra,* at 30. A municipality is better able to absorb the cost of an injury it causes than the individual victim. *Haverlack, supra,* at 30.

Neither *Enghauser* nor *Haverlack* defines the parameters of the newfound right of a private litigant against a municipality. The Ohio Supreme Court has not ruled on the issue of whether attorney fees or punitive damages may be awarded against a municipal corporation. However, under R.C. Chapter 2743, by which the state of Ohio waived sovereign immunity, the Supreme Court has ruled that punitive damages are not recoverable against the state, unless specifically authorized by statute. *Drain* v. *Kosydar* (1978), 54 Ohio St. 2d 49, 55-56 [8 O.O. 3d 657]. See, also, *Berke* v. *Dept. of Pub. Welfare* (1976), 52 Ohio App. 2d 271, 273-274 [6 O.O. 3d 280]. In *Drain, supra,* at 55-56, the court ruled that the rationale of *Ranells* v. *Cleveland* (1975), 41 Ohio St. 2d 1 [70 O.O. 2d 1], applies with equal force in the instance where punitive damages are sought against the state.

In *Ranells,* the Ohio Supreme Court held that, in the absence of a statute particularly authorizing such recovery, punitive damages could not be assessed against a municipality. Adopting the reasoning of numerous other states,[2] the court, at 7-8, emphasized that:

---

[1] " * * * [N]o tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function, or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. * * * " *Enghauser, supra,* at 36. Of course, statutory grants of immunity remain viable.

[2] See, generally, Annotation (1980), 1 A.L.R. 4th 448. The four bases upon which our sister courts have rejected the assess-

"It must be continually emphasized that punitive damages are assessed over and above that amount adequate to compensate an injured party. As such, they are nothing less than a windfall to any plaintiff who receives them. When their reason for being — to punish or deter — ceases to exist, the entire rationale supporting them collapses. * * * "

The court noted that the deterrent effect attributed to punitive damages added little justification for their award against municipalities. It is assumed that a public official will do his duty; if discipline of a wrongdoing employee is indicated, appropriate measures are available through the electorate or through elected officials responsible to the electorate. *Ranells, supra,* at 6-7, citing *Chappell* v. *Springfield* (Mo. 1968), 423 S.W. 2d 810, 814. Furthermore, the court indicated that permitting the award of punitive damages against municipal corporations would contravene public policy in that the people bearing the burden of the punishment are the public: the very persons who are to benefit from the public example to be set. *Ranells, supra,* at 6, citing *Fisher* v. *Miami* (Fla. App. 1964), 160 So. 2d 57, 59, affirmed (1965), 172 So. 2d 455.

In the *Drain* case, the Ohio Supreme Court extended the *Ranells* doctrine, prohibiting the assessment of punitive damages against municipalities, to the benefit of the state. The fact that the Supreme Court adopted the reasoning of *Ranells after* the statutory abrogation of sovereign immunity strongly indicates that the rationale of *Ranells* has survived in the context of the judicial abrogation of municipal immunity. Therefore, we hold that punitive damages cannot be awarded against a municipal corporation.

As to the trial court's dismissal of plaintiffs' claim for attorney fees, we find that the trial court properly ruled that attorney fees may not be recovered from a municipal corporation. A plaintiff is entitled to attorney fees only where punitive damages are awarded. *Davis* v. *Tunison* (1959), 168 Ohio St. 471 [7 O.O. 2d 296], paragraph three of the syllabus; *Langhorst* v. *Riethmiller* (1977), 52 Ohio App. 2d 137, 142 [6 O.O. 3d 101]; *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183 [71 O.O. 2d 174]; *Kapcsos* v. *Hammond* (1983), 13 Ohio App. 3d 140, 142. See, also, *Stuart* v. *Natl. Indemn. Co.* (1982), 7 Ohio App. 3d 63, 70. Since punitive damages are inappropriate against a municipal tortfeasor, absent statutory authorization, it follows that attorney fees also may not be awarded unless authorized.[3] The Henrys' cross-assignments of error are overruled.

The City's Assignments of Error
I and II

"I. The trial court's award for lost profits was contrary to law.

"II. The jury's $18,000 award for lost profits was unsupported by the evidence and based on mere speculation where the evidence indicates that

---

ment of punitive damages against municipalities are:

(1) The victims of an award of punitive damages are the same people who are to benefit from the deterrent effect;

(2) The unlimited taxing power of a municipality would lead to excessive awards;

(3) The presumption is that municipal officers will do their duty and punish employees as necessary;

(4) The award of punitive damages would not deter the misfeasance or malfeasance of municipal employees, who would not bear the burden of the award of punitive damages.

[3] The Ohio Supreme Court has expressed its reluctance to find an implied statutory authorization of attorney fees awards. *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177, 180-181 [75 O.O. 2d 224].

plaintiffs-appellees earned net profits of $4,188.10 in one year and failed to mitigate damages."

The city claims error as to the award of lost profits, arguing that such award was contrary to both the law and the evidence offered at trial. We disagree.

A plaintiff may recover profits lost as a result of a defendant's tortious conduct if such damages may naturally be expected to follow from the wrongful act and if the damages are reasonably ascertainable. *Zimmerman* v. *Isaly Dairy Co.* (1956), 165 Ohio St. 354 [59 O.O. 465]; *LoSchiavo* v. *Northern Ohio Traction & Light Co.* (1922), 106 Ohio St. 61; *Bishop* v. *East Ohio Gas Co.* (App. 1943), 41 Ohio Law Abs. 353, reversed on other grounds (1944), 143 Ohio St. 541; 25 Corpus Juris Secundum (1966) 752, 1226, Damages, Sections 44, 143. Under this statement of the law, David Henry is entitled to his lost profits resulting from the damage to his chimney sweeping business. He had conducted business for the eighteen months preceding the explosion and fire. His lost profits were caused by the explosion and the resultant (1) destruction of his business records (necessary to secure the "follow-up" patronage essential to a service establishment), (2) disruption of telephone service to plaintiff's home and business, and (3) injury to David Henry, both physical and emotional, which hindered his ability to conduct business or mitigate the losses from the damage to his business. Furthermore, the zoning regulations prohibiting business use of the plaintiffs' lot does not proscribe an award of lost profits. *Bishop, supra,* at 365. The award of lost profits was not contrary to law.

Similarly, the evidence in this case supports the award of lost profits. Plaintiffs properly introduced testimony that the explosion caused the injury to plaintiffs' chimney sweeping business. Furthermore, they introduced expert testimony relative to plaintiffs' lost profits.

*Brookridge Party Center, Inc.* v. *Fisher Foods, Inc.* (1983), 12 Ohio App. 3d 130. Defendant does not challenge the credentials of the expert, Dr. Coyne.

Reviewing the record, we find evidence that the chimney sweeping business was a going concern with favorable prospects. Therefore, we cannot say that plaintiffs' lost profits were too speculative for assessment. *Brookridge Party Center, Inc., supra,* at 136. There is competent, credible evidence to support the award of lost profits; we will not reverse. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80.

Finally, we have reviewed the trial court's instruction as to lost profits. The trial court instructed that:

"Mr. Henry has claimed that he has suffered damages in his chimney sweeping business. Now, the equipment was not lost; however, it is alleged that there has been loss of profits. Profits lost on account of interruption of an established business may be recovered if the plaintiff makes it reasonably certain, by competent proof, what the amount of his loss actually is.

"You are also to consider future loss of profits, if you find from the evidence that lost profits are reasonably certain to continue into the future."

Furthermore, as to plaintiffs' duty to mitigate their business losses, the trial court instructed that:

"You are hereby instructed * * * [of] the fundamental principle that the person injured by the accident of another is bound to use reasonable care to make their [*sic*] damage as light as possible. In other words, to minimize and mitigate — excuse me, minimize and mitigate the damages in this situation. The plaintiffs are not permitted to remain idle and thus enhance their damages. They must make reasonable efforts, considering all of the circumstances, to resume their chimney sweep business in order to mitigate their damages."

The trial court properly instructed the jury.

The city's first and second assignments of error are not well-taken.

## The City's Assignment of Error III

"The trial court erred in allowing the jury to consider an award for negligent infliction of serious emotional distress where plaintiffs-appellees failed to present evidence of severe and debilitating emotional injuries."

A cause of action for negligent infliction of severe emotional distress may be stated where a plaintiff-bystander observes an accident, appreciates the peril which took place, and suffers serious emotional distress which was reasonably foreseeable. *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72. Emotional distress is serious if it is both . severe and debilitating; it is reasonably foreseeable where the plaintiff was related to the victim (if any) and where the shock resulted from the observation of the accident and the resulting emotional impact. *Paugh, supra.*

Defendant claims that the Henrys failed to introduce evidence of severe and debilitating emotional distress. However, a thorough review of the record reveals ample evidence, through the testimony of lay witnesses and the plaintiffs' physician, to support a finding that the plaintiffs suffered severe emotional distress as a result of the city's negligent conduct. We will not reverse the award where competent and credible evidence supports each element of plaintiffs' claim. *Seasons Coal Co., supra,* at 80.

The city's third assignment of error is overruled.

## The City's Assignments of Error IV and V

"IV.  The trial court erred in allowing plaintiffs-appellees' counsel to explain, in closing argument, a witness' absence from trial where no supporting evidence was presented at trial.

"V.  The trial court committed prejudicial error in not striking language in plaintiffs-appellees' closing argument which statements were made for the sole purpose of exciting passion and prejudice in the jury."

In summation, counsel for the city commented that:

" * * * [Mrs. Henry] testified that she went to Dr. Ripple. Well, we didn't hear Dr. Ripple's testimony. And, Mr. Weimer is a very good attorney, very methodical, and you can be sure if there was anything that would help his clients' cause, there was anything that was wrong, anything that would help the case at all, Dr. Ripple would have been here to testify now."

In response, the Henrys' counsel stated:

"I wanted desperately to get Dr. Ripple in here, ·he absolutely refused to testify in the court or have — give testimony in his office. And, he said he would go to jail for 10 days instead of testifying because of a prior experience he had in a courtroom. And, he would not give testimony."

Prior to this explanation, defendants' counsel interposed a timely objection. The trial court overruled the objection, but instructed the Henrys' counsel to be very brief.

We do not condone the explanation of a witness' non-appearance, unsupported by evidence. However, in this case, the city's attorney raised the subject by his comment on Dr. Ripple's absence. Furthermore, the record reflects that he was aware of the reasons for the doctor's emphatic unwillingness to testify.[4] Finally, the trial

---

[4] " * * * [C]aution should be exercised in permitting counsel to comment on the failure of the opposing party to call witnesses, and the practice should be permitted only where

court admonished the Henrys' counsel to be brief in his response.

In the context of a motion for new trial based upon a counsel's allegedly inflammatory conduct, this court has held that the determination of whether conduct was sufficient to taint the verdict with passion or prejudice lies within the sound discretion of the trial court. *Lance* v. *Leohr* (1983), 9 Ohio App. 3d 297. Before a reviewing court will reverse the exercise of the trial court's discretion, the record must clearly demonstrate highly improper argument which tends to inflame the jury. *Larrissey* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207 [44 O.O. 238]; *Lance, supra,* at 298. Neither the explanation of Dr. Ripple's absence nor the other examples presented by the city will support a reversal of the trial court's judgment.

As to the city's fifth assignment of error, defendant did not object to plaintiffs' closing arguments at a time when the trial court could have stricken any objectionable argument or could have made a corrective instruction. Therefore, we will not consider this claim of error. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O. 3d 98]; *State* v. *Gordon* (1971), 28 Ohio St. 2d 45 [57 O.O. 2d 180].

The city's fourth and fifth assignments of error are not well-taken.

### The City's Assignment of Error VI

"The trial court erred in allowing plaintiffs-appellees' expert witness to testify where plaintiffs-appellees did not comply with discovery requests with regard to this expert witness."

The claim here is that the trial court committed prejudicial error by permitting plaintiffs' witness, Dr. Moorstein, to testify. The city argues that it was surprised by plaintiffs' decision to call Dr. Moorstein as a witness, and that it did not retain an expert of its own, relative to the Henrys' emotional distress claim, because plaintiffs had represented that they would not call Dr. Moorstein.

However, the record does not support these claims. Plaintiffs' answers to defendant's interrogatories, filed on July 6, 1984, reveal that Dr. Moorstein was listed as a treating physician. The city thereby was put on notice that plaintiffs might call the doctor as a witness. Furthermore, if the city was surprised, it should have requested a continuance to depose Dr. Moorstein. *Nickey* v. *Brown* (1982), 7 Ohio App. 3d 32, 34. Finally, the record in this case does not indicate that the testimony of Dr. Moorstein was so surprising to the defendant as to warrant exclusion. *Nickey, supra,* at 34.

The city also claims that the doctor's testimony should have been excluded because the plaintiffs failed to comply with a court order that they produce the reports of expert witnesses expected to be called. However, plaintiffs did not have a report from Dr. Moorstein; their failure to produce what they did not possess does not mandate the exclusion of the doctor's testimony. The trial court correctly permitted Dr. Moorstein to testify.

Defendant's sixth assignment of error is not well-taken.

### The City's Assignment of Error VII

"The court erred by permitting plaintiffs-appellees to recover damages for loss of use of their home as well as temporary housing expenses."

Defendant argues that the Henrys' award for loss of use of their home is

---

it appears that the witness could have been procured and it is a fair inference from the conduct of the party under all of the circumstances that he knew or believed that the testimony of the witness would be adverse, and for that reason did not produce him." (Footnote omitted.) 88 Corpus Juris Secundum (1955) 361, 364, Trial, Section 184.

duplicative of the appropriation award which compensated the Henrys for the deprivation of their home and their land. Apparently, this is a case of first impression in Ohio. The city urges this court to analogize this matter to cases involving the total destruction of personal property. Under those cases, a plaintiff could not recover for the loss of use of the property. *Hayes Freight Lines, Inc.* v. *Tarver* (1947), 148 Ohio St. 82 [35 O.O. 60], paragraph one of the syllabus; *Insley* v. *Mitchell* (1963), 118 Ohio App. 104, 108-109 [24 O.O. 2d 430].

However, there is a clear distinction between the total loss of personal property, such as an automobile, and the total loss of real property, such as one's home and land. Personal property generally is replaceable relatively easily and quickly, whereas the purchase of real estate is more complicated and involves a significant investment of time. Furthermore, in this case, plaintiffs did not know they would be prohibited from returning to their Hardy Road site (and, therefore, would have to purchase a new lot as well as a replacement home) until June 1984. Finally, the trial court's instructions to the jury clearly limited the damages which could be awarded for loss of use to the reasonable and necessary expenses for the time between the explosion, March 21, 1984, and the time the Henrys moved into a replacement home.

If the Henrys were *not* awarded damages for their loss of use of their home, they would not be made whole, for the expenses they incurred for temporary housing were not offset against the cost of their new home by the seller. The award, therefore, was a proper measure of damages in that it served to make the plaintiffs whole. *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104 [52 O.O. 2d 395], paragraph one of the syllabus.

Defendant's seventh assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY, J., concurs.

GEORGE, J., concurs in part and dissents in part.

MAHONEY, J., concurring. It is with reluctance and on the basis of *stare decisis* that I concur in the decision concerning the assignments of error presented by the Henrys. The current state of the law is such that we must distinguish between private corporations and public corporations as to punitive damages. Why can't we at least create an exception and allow the complainant to recover attorney fees as part of his compensatory damages in cases such as this where punitive damages would otherwise be recoverable against a private corporation?

Additionally, while the parties have agreed for the sake of convenience to try the "appropriation" case as a method of measuring the Henrys' damages for the loss of their home, it should not be forgotten that their losses were occasioned by the city's negligence and trespass upon their home. This gave them causes of action very personal to them which resulted in natural, foreseeable and probable consequential damages. Many of the items of damage were due to the hardships, disruptions and inconveniences flowing from the shock, fear and uncertainties arising from having their home blown out from under them. Concededly some of these overlap with or are indistinguishable from loss of use or emotional distress.

GEORGE, P.J., concurring in part and dissenting in part. I concur with the majority except as to the disposition of the city's seventh assignment of error:

"The court erred by permitting

plaintiffs-appellees to recover damages for loss of use of their home as well as temporary housing expenses."

The city's de facto taking occurred on March 21, 1984, establishing the date upon which damages became chargeable against it.

Here the jury award consisted of compensation of $57,200 plus interest from March 21, 1984 and an additional award of approximately $10,000 as compensation for the loss of use of their property. This creates an improper multiple recovery.

4 Restatement of the Law 2d, Torts (1979) 542, Section 927, Comment *o* states:

"*Loss of use of chattel.* Ordinarily there is no recovery for loss of use of a chattel [real property] after the point of time at which the plaintiff has fixed the loss, since in the measure of damages is included interest on the subject matter as well as damages for losses proximately resulting from the loss of use. On the other hand, as an alternative to interest during the period of detention, the damages can properly include an amount for expenses in procuring a necessary substitute [temporary housing] or for the value of the use of a substitute until a replacement of the subject matter can be made, as stated in § 931, Comment *c.*"

Either the appellees are entitled to recover just compensation plus interest from the date of the taking or they are entitled to recover for the loss of use of their property which necessarily includes an amount for rental; not both. These alternative recoveries are mutually exclusive. Thus, recovery of one denies recovery of the other.

Also informational on this point is 38 Ohio Jurisprudence 3d (1982) 514-515, Eminent Domain, Section 365:

"Under the Ohio constitutional provision stating that where private property shall be taken for public use, a compensation therefor shall first be made in money, or secured by a deposit of money, compensation means 'full' compensation, and a landowner is entitled to interest on the value of the property taken * * * from the time of the taking until the date the owner is either paid, or the award is made available to the owner. The controlling principle of the rule, that constitutionally interest must be paid on the award, is that it shall commence from the date the owner loses the use of his property." (Footnotes omitted.)

Under the facts of this case it is evident that appellees received full compensation through an award of $57,200 plus interest. They were not further entitled to an award for the loss of use of this same property nor for substitute housing. The matter should be remanded to the trial court for a deduction of those multiple damages assessed wrongfully against the city.