DEEDS, APPELLANT, *v.* CITY OF IRONTON, APPELLEE.

8

(No. 1860—Decided
April 29, 1988.)

*Randall L. Lambert,* for appellant.
*Charles Cooper,* for appellee.

STEPHENSON, J. This is an appeal from a judgment entered after a bench trial by the Ironton Municipal Court denying recovery to Gary Deeds, plaintiff below and appellant herein, of $136 from the city of Ironton, Ohio, a municipal corporation that was defendant below and is appellee herein, which money appellant claimed to be due to him from appellee by the improper denial of sick leave benefits. The following error is assigned:

"1. The trial court erred in finding that the Chief of Police Directive 104-01-12-83 was a proper exercise of management rights and was not in conflict with the Article VI sick leave provision of the negotiated agreement.

"A. A rule implemented by an employer which restricts use of sick leave beyond the provisions of the sick leave provision of a negotiated agreement is invalid.

"B. Negotiated agreement between a public employer and an exclusive representative of an employee governs the wages, hours and terms and conditions of public employment covered by the agreement and any rule adopted in conflict with said agreement is invalid."

The cause was submitted to the court below by the parties upon the pleadings and facts as set forth in the parties' trial memoranda without the formal presentation of evidence. The following are the pertinent facts as they appear in the record.

Appellant was, at the times here pertinent, employed as a police officer for the city of Ironton Police Department. On January 12, 1983, the Ironton Chief of Police issued Directive 104-01-12-83, which reads as follows:

"Effective this date, it will be a departmental policy that if any officer and/or dispatcher is off duty due to illness prior to and/or after in conjunction with their assigned days off, they shall submit a doctor's statement before returning to regular duty."

Subsequently, a collective bargaining agreement effective between January 1, 1985 and December 31, 1986 was entered into between the Fraternal Order of Police, Lodge No. 75 and the city of Ironton, regulating terms and conditions of employment. The agreement included, *inter alia,* the following as well as a multistep grievance procedure:

"ARTICLE V: MANAGEMENT RIGHTS

"A. Except as specifically limited by explicit provisions of this agreement, the City, under the Ohio Revised Code Sections 4117.08(C) 1-9, shall have the exclusive rights to: manage the operations, control the premises, direct the working forces, and maintain efficiency of operations. Specifically, the City's exclusive management rights include, but are not limited to, the sole right: to hire, discipline and discharge for just cause, lay off, and promote; to promulgate and enforce reasonable rules and regulations; to reorganize, discontinue, or enlarge any department or division; to transfer employees (including the assignment and allocation of work) within the Ironton Police Department; to introduce new and/or improved equipment, methods and/or facilities; to assign employees, numbers employed, duties to be performed, qualifications required, and areas worked, subject only to the

restrictions and regulations governing the exercises of these rights as are expressly provided herein.

"ARTICLE VI: SICK LEAVE

"A. Employees shall be granted leave with full pay for actual illness or injury, confinement by reason of quarantine, serious illness of the employee's immediate family who is a permanent resident in his home, and/or non-routine visit to a doctor or dentist for medical care.

"B. Said leave shall be for as many days as are necessary. Pay shall be for as many days as the employee has in accumulated sick leave. Sick leave shall accumulate at the rate of one and one-fourth (1¼) days per month of employment for all employees in the Police Department.

"C. A certificate from a physician must be provided for any sickness extending beyond two (2) consecutive days.

"* * *"

Appellant's regular days off were April 5 and 6, 1986. He called in sick for the dates of April 3 and 4, 1986, and did not work on those dates. On April 8, 1986, appellee was not paid for the dates of April 3 and 4, sick leave for those dates being disallowed because he did not, pursuant to the directive of January 12, 1983 set forth above, furnish a doctor's statement before returning to regular duty. A grievance was filed by appellant which was denied at all levels, after which appellant instituted the present action as permitted by the collective bargaining agreement.

The referee to which the case was referred issued a report which, after summarizing the facts essentially as set forth above, concluded as follows:

"Article VI of the Collective Bargaining Agreement provides for the accumulation of sick time and for the exercise thereof; the only restriction on the use of sick time is the presentation of a doctors certificate for any sick time extending beyond two days. The subject Directive does not limit the exercise of sick time but simply requires that when the same is exercised in conjunction with assigned days off that a doctors certificate be presented. Such a rule is reasonably calculated to allocate the work load within the Police Department pursuant to Article V of said Agreement and is not in conflict with Article VI.

"It is hereby found that the Defendant was within its rights in the action taken, and it is recommended that the Plaintiff's claim be dismissed at his costs."

The court approved the report and entered judgment in accordance with the report. No argument is raised as to the authority of the appellee city of Ironton to reasonably regulate, in order to prevent abuse, the taking of sick leave by its employees. See R.C. 124.38, which provides, *inter alia*, the following:

"Each employee in the various offices of the * * * municipal * * * service, * * * shall be entitled for each completed eighty hours of service to sick leave of four and six-tenths hours with pay. Employees may use sick leave, upon approval of the responsible administrative officer of the employing unit, for absence due to personal illness, pregnancy, injury, exposure to contagious disease which could be communicated to other employees, and to illness, injury, or death in the employee's immediate family. * * * The appointing authority of each employing unit shall require an employee to furnish a satisfactory written, signed statement to justify the use of sick leave. If medical attention is required, a certificate stating the nature of the illness from a licensed physician shall be required to justify the use of sick leave. * * *"

Appellee argues, in substance, that

the right of appellee to regulate the use of sick leave is embodied in Article V of the collective bargaining agreement and therefore the police department directive above set forth is valid and enforceable. Appellant essentially argues that Article VI of the collective bargaining agreement controls and the directive is in conflict and thus invalid.

R.C. 4117.10(A) provides, *inter alia,* as follows:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

The section further provides for certain exceptions to supremacy of the contract over conflicting requirements of law, none of which is applicable herein.

The question then posited is whether, since the contract is not silent on the issue of sick leave, the parties intended to continue the right of control by appellee of sick leave under Article V. As stated in *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, 247, 67 O.O. 2d 321, 322, 313 N.E. 2d 374, 376: "It is a well-known principle that contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. *State, ex rel. Maher,* v. *Baker* (1913), 88 Ohio St. 165, 102 N.E. 732; *Travelers Ins. Co.* v. *Buckeye Union Cas. Co.* (1961), 172 Ohio St. 507, 178 N.E. 2d 792; *Olmstead* v. *Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St. 2d 212, 259 N.E. 2d 123; 4 Williston on Contracts (3 Ed.), 303, Section 601."

The first sentence of Article V(A) provides:

"Except as specifically limited by explicit provisions of this agreement, the City, under the Ohio Revised Code Sections 4117.08(C) 1-9, shall have the exclusive rights to: manage the operations, control the premises, direct the working forces, and maintain efficiency of operations."

R.C. 4117.08 reads as follows:

"(A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section.

"(B) The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.

"(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

"(1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;

"(2) Direct, supervise, evaluate, or hire employees;

"(3) Maintain and improve the efficiency and effectiveness of governmental operations;

"(4) Determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

"(6) Determine the adequacy of the work force;

"(7) Determine the overall mission of the employer as a unit of government;

"(8) Effectively manage the work force;

"(9) Take actions to carry out the mission of the public employer as a governmental unit.

"The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement."

Under the above section, appellee reserves the rights granted under Subsections (C)(1) through (9), which management rights are not subject to collective bargaining unless otherwise agreed. However, on all subjects which "affect wages, hours, terms and conditions of employment," collective bargaining is required. Since payment for sick leave affects wages and terms and conditions of employment, it was required to be bargained for, and the reservation of management rights in R.C. 4117.08(C), which the appellee retained, does not include the right to impose additional sick leave requirements not included in the collectively bargained provision regulating sick leave. ·

Article VI provides that a certificate of a physician must be provided only as to sickness extending beyond two consecutive days. While there are forceful arguments that support the reasons and logic of the directive by appellee to prevent sick leave abuse, by failing to bargain for and include such in Article VI, the enforcement directive which imposes an additional requirement for the use of sick leave is invalid.

Accordingly, the assignment of error is sustained, the judgment is reversed and final judgment is entered in favor of appellant.

*Judgment reversed.*

GREY, P.J., and ABELE, J., concur.