GRANGE MUTUAL CASUALTY COMPANY, APPELLANT, ET AL., *v.* CITY OF COLUMBUS ET AL., APPELLEES.

(No. 88AP-386—Decided
April 11, 1989.)

*Sheppard & Bale* and *David G. Bale,* for appellant.

*Henry W. Eckhart,* for Jay V. Eckhart.

*Ronald J. O'Brien,* city attorney, and *David W. Insley,* for appellees.

WHITESIDE, J. Plaintiff-appellant, Grange Mutual Casualty Company ("Grange"), appeals from a decision of the Franklin County Municipal Court and raises the following three assignments of error:

"1. The trial court erred in its dismissal of appellant-plaintiff Grange's claim under Ohio Revised Code Section 2744.05(B), because the defense of sovereign immunity as applied under that section violates the principles of equal protection, due process, and due compensation for a taking of property, and is therefore unconstitutional.

"2. The trial court erred in its dismissal of appellant-plaintiff Grange's claim under Ohio Revised Code Section 2744.05(B), because laws must be rationally fashioned to meet a legitimate state interest, and this statute arbitrarily bars insurers which is a classification that has nothing to do with the policy of promoting fiscal soundness.

"3. The trial court erred in dismissing appellant's claim because Chapter 2744 of the Ohio Revised Code does not deprive Grange of all rights to recovery, it only deprives Grange of the right to subrogation through its insurance contract, therefore Grange should have been permitted to submit its actual damages under the statute."

On November 20, 1985, defendant Wayne Wharton, a Columbus police officer, drove a police cruiser into the rear of a vehicle owned by plaintiff Jay V. Eckhart, an insured of Grange. Subsequently, Eckhart alleged that defendants-appellees Wharton and the city of Columbus were liable for the diminution in value of his automobile. Grange filed a subrogation claim against defendants for Grange's payment in the amount of $2,491.42 to Eckhart for his collision loss. The trial court held that Eckhart was damaged as a direct and proximate result of Wharton's negligence and awarded Eckhart judgment in the amount of $4,066.65 against the city of Columbus. However, in a separate entry, the trial court dismissed Eckhart's claim against defendant Wharton and Grange's subrogation claim against both defendants pursuant to R.C. 2744.05(B).

Grange in its first two assignments of error contends that the trial court erred in finding R.C. 2744.05(B) constitutional. Grange argues that R.C. 2744.05(B) violates the Equal Protection, Due Process, and Due Compensation Clauses of the United States and Ohio Constitutions and is not rationally fashioned to meet a legitimate state interest.

One primary issue in this case is whether there is a rational basis for the state to treat an insurer whose insured is negligently injured by an employee of a political subdivision differently

than an insurer whose insured is negligently injured by an ordinary tortfeasor.

Section 16, Article I, of the Ohio Constitution states that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." Thus, except to the extent the state by law provides for such a suit, the Ohio Constitution does not provide for suits to be brought against the state as a result of its alleged tortious conduct.

The doctrine of sovereign immunity prevailed in Ohio until 1982 when the Ohio Supreme Court in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 30, 2 OBR 572, 575, 442 N.E. 2d 749, 752, abolished judicially created sovereign immunity, stating that, since Ohio sovereign immunity for municipalities was judicially created, it could also be judicially abolished. The second paragraph of the *Haverlack* syllabus holds that the defense of sovereign immunity is not available in the absence of a statute providing immunity to a municipal corporation from an action for damages alleged to be caused by its negligence, in that case, negligence in the operation of its sewage treatment plant. Later, in *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787, municipal sovereign immunity was abolished in all actions for damages alleged to be caused by the tortious conduct of the municipality, in the absence of a statute providing immunity. The basic change was in the nature of the General Assembly action required. Under prior judicial decisions, sovereign immunity existed unless otherwise provided by statute. *Raudabaugh* v. *State* (1917), 96 Ohio St. 513, 118 N.E. 102; *Krause* v. *State* (1972), 31 Ohio St. 2d 132, 60 O.O. 2d 100, 285 N.E. 2d 736.[1] Under *Haverlack* and its progeny, sovereign immunity exists only if provided by statute.

Subsequently, the General Assembly adopted R.C. Chapter 2744, governing, *inter alia,* municipal tort liability. R.C. 2744.02 defines the extent of the municipal liability. R.C. 2744.02(A)(1), in pertinent part, states that "* * * a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function," except as provided in R.C. 2744.02(B). Among other provisions, R.C. 2744.02(B)(1) provides that political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. In other words, sovereign immunity exists and a municipal corporation (or other political subdivision) is not liable unless R.C. 2744.02 provides otherwise, which it does in the instance of the negligent operation of a motor vehicle.

When the state consents to be sued, it may qualify and draw perimeters around that granted right without violating due process or equal protection. When a state has the power to give, it may give only part and limit that which is granted. This is true whether the initial "grant" is by judicial decision or by legislative act. In the exercise of the state's right (as defined by *Haverlack* and *Strohofer* and their progeny) to circumscribe or

---

[1] Both *Raudabaugh* and *Krause* were overruled in part in *Schenkolewski* v. *Cleveland Metroparks System* (1981), 67 Ohio St. 2d 31, 21 O.O. 3d 19, 426 N.E. 2d 784.

limit the power given to persons to sue the state for damages, the state enacted R.C. 2744.05(B), which limits damages to be awarded and states in part:

"If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits. * * *"

R.C. 2744.05 became effective on November 20, 1985, the day on which the subject accident occurred. Consequently, Grange's subrogation rights were limited by the legislature to suits not involving political subdivisions of the state. Sovereign immunity has long been recognized as not denying any right to equal protection. See *Krause* v. *State, supra,* at paragraph four of the syllabus. * * *

R.C. 2744.05(B) predicates application of sovereign immunity not upon the basis of the nature of the governmental activity involved but, instead, upon the nature of the claim and of the claimant. Insureds are not permitted to collect alleged damages for which they were reimbursed by insurance, and insurers are not permitted to assert subrogation rights. Essentially, R.C. 2744.05(B) merely abolishes the collateral source rule. The injured claimant cannot recover for damages reimbursed by insurance. Once the collateral source rule is abolished, the very basis for subroga-

tion no longer exists. There is no right of the insured to which the insurer can be subrogated. The abolition of subrogation is a concomitant of the abolishment of the doctrine of the collateral source rule. No due process rights of the insurer are involved.

R.C. 2744.05 does not violate the Equal Protection Clause of Section 2, Article I, of the Ohio Constitution, which requires the state to give equal protection to the people. Further, the Ohio Supreme Court in *Wargetz* v. *Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St. 3d 15, 17-18, 11 OBR 49, 51, 462 N.E. 2d 1215, 1217, stated:

"A statutory classification which involves neither a suspect classification nor a fundamental interest does not violate the Equal Protection Clause of the Ohio Constitution if it bears a rational relationship to a permissible governmental objective. *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, 123 [70 O.O. 2d 206]; *State, ex rel. Lourin,* v. *Indus. Comm.* (1941), 138 Ohio St. 618, 620 [21 O.O. 490]. * * *"

R.C. 2744.05(B) creates a limited distinction between persons asserting claims under subrogation provisions of an insurance contract or other contract (insurance claimants) and persons asserting claims for tortious injury. Under this distinction, injured persons have remedies only for unreimbursed damages caused by the torts of municipalities, while an insurance claimant has no remedy against tortfeasor municipalities based upon subrogation. Again, the subrogation right necessarily is related to the collateral source doctrine, which permitted double recovery both from the insurer and the tortfeasor. Since double recovery is ordinarily not favored, it is only fair that the insurer who has paid the expenses be reimbursed when the insured recovers such expenses from the tort-

feasor. As a matter of convenience, the insurer is permitted to assert such subrogated rights directly against the tortfeasor.

However, once the collateral source rule is abolished, the very foundation for subrogation no longer exists. There no longer is a right of the insured for the insurer to assert by way of subrogation. The insured has no right to recover from the municipal tortfeasor expenses or damages reimbursed by insurance. The insured then cannot confer (or transfer) a right of recovery which he does not have. The very foundation of subrogation is that the subrogee succeed to the right of the subrogor. Where subrogor has no rights, subrogation, as such, cannot exist.

R.C. 2744.05(B) also creates a distinction between insurers whose insureds are injured by a political subdivision's negligence and those insurers whose insureds are injured by nongovernmental tortfeasors. Neither fundamental rights such as voting and interstate travel nor a suspect class such as race is involved. Therefore, in determining whether R.C. 2744.05(B) violates the Equal Protection Clause, this court must apply the rational basis test. The issue is whether there is a rational basis for distinguishing between government tortfeasors and other tortfeasors with respect to both the collateral source rule and the concomitant right to subrogation.

The rational basis test requires this court first to identify the class created by the statute and then determine whether the classification is rationally related to a legitimate government interest. Here the protected class is political subdivisions. Protection of the fiscal integrity of the state's political subdivisions has been recognized as a legitimate government interest. See *Shapiro* v. *Thompson* (1969), 394 U.S. 618, 633. Under the rational basis test, as long as the method chosen rationally advances a reasonable and identifiable governmental objective, the court should disregard the existence of other possible methods of allocation. See *Schweiker* v. *Wilson* (1981), 450 U.S. 221.

With the abolishment of sovereign immunity, the state was confronted with a potential substantial increase in the number of claims against political subdivisions. One method to limit the financial impact is to eliminate the collateral source rule and subrogated claims. In doing so, the state has treated all insureds and insurance companies in the same manner with regard to claims against political subdivisions. For the state to limit the fiscal impact upon political subdivisions by permitting tort claims to be made against them only to the extent that a collateral source of payment does not exist and by barring subrogation claims with respect to such collateral source payments is a legitimate state purpose. Thus, a rational basis exists for such limitation.

The state, as discussed above, could extend sovereign immunity to all claims. With respect to claims against political subdivisions, the legislature has determined to abolish the collateral source rule and to bar subrogated claims based upon such collateral payments.

The United States District Court for the Southern District of Ohio in *Greyhound Food Management* v. *Dayton* (1986), 653 F. Supp. 1207, 1213-1215, affirmed and remanded for other reasons (C.A. 6, 1988), 852 F. 2d 866, found that R.C. 2744.05(B) violates the Equal Protection Clause. In doing so, that court, although recognizing the applicability of the rational basis test, applied a stricter scrutiny, in effect that scrutiny which is generally applicable to cases involving gender discrimination. We find this

application of the rational basis test to be clearly erroneous. In any event, the district court's decision in favor of the insurers not only is neither binding nor persuasive but was, as indicated, affirmed for other reasons, *i.e.*, on the basis of unconstitutional retroactive legislation.

Grange also contends that R.C. 2744.05 results in an unconstitutional taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution as made applicable to the state of Ohio through the Fourteenth Amendment. Grange contends that, pursuant to its contract with the insured, it had a cause of action against the city which constituted a property right as that term is used in the Constitution, which right was unconstitutionally taken.

The Ohio Supreme Court in *Cincinnati* v. *Hafer* (1892), 49 Ohio St. 60, 65, 30 N.E. 197, 198, stated:

"* * * While by a chose in action is ordinarily understood a right of action for money arising under contract, * * * [i]t embraces demands arising out of a tort, as well as causes of action originating in the breach of a contract. * *,*

"A thing in action, too, is to be regarded as a property right. One of the well recognized divisions of personal property is into property in possession, and property or choses in action. * * *"

While an insured has a property right in its subrogated action against a tortfeasor, Grange's contractual right to subrogation never rose to the level of a property right since R.C. 2744.05 became effective prior to the accrual of any right of action under the insurance contract or otherwise. Grange's contractual right is only to succeed to its insured's rights to the extent of any payments by it. There is no property right since R.C. 2744.05(B) provides that Grange's insured has no right of recovery with respect to payments received from an insurance company. Thus, the subrogation clause of the insurance contract never became effective.

Grange has not been unconstitutionally deprived of any right since it never had any right to recover from the city. Plaintiff has been given the right to sue, which by virtue of Section 19, Article I, and the common law of sovereign immunity, must first exist before a right accrues.

* * *

The injury in this case occurred after the enactment of R.C. 2744.05, and, therefore, Grange did not have an existing property or contract right. R.C. 2744.05 does not result in an unconstitutional taking of property without just compensation.

R.C. 2744.05(B) is a constitutional exercise of the state's police power as a reasonable measure necessary for the stabilization of the fiscal impact of the abolishment of sovereign immunity and is reasonably related to the maintenance of public peace, health, and safety.

R.C. 2744.05(B) is also an enactment under the general police power of the state to promote health, safety, and welfare of its citizens, both to afford compensation to those injured by tortious political subdivisions and to limit the financial impact upon such public bodies. As such, the statute is presumed to be constitutional. Such presumption can only be overcome if it is clearly shown that the enactment bears no real or substantial relationship to a legitimate state interest. See *Cincinnati* v. *Welty* (1980), 64 Ohio St. 2d 28, 29, 18 O.O. 3d 211, 212, 413 N.E. 2d 1177, 1178.

R.C. 2744.05(B) prevents insurers from recovering as subrogees upon insurance claims in which an insured was damaged or injured by a municipal

tortfeasor. Accordingly, R.C. 2744.05 (B) does not violate the Equal Protection, Due Process, and Due Compensation Clauses of the Ohio and United States Constitutions. It is rationally related to a legitimate state interest. Grange's first and second assignments of error are not well-taken.

Grange, by its third assignment of error, contends that R.C. Chapter 2744 does not deprive plaintiff of all its rights to recovery, only its right to subrogation under the insurance contract. Plaintiff contends that it may recover actual damages under R.C. Chapter 2744.

R.C. 2744.02(B)(1) states that political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle *subject to R.C. 2744.05,* and, as noted, R.C. 2744.05 (B) does not allow recovery by a subrogee-insurer. In addition, R.C. 2744.05(C) is a reference to the amount allowable in damages and is restricted to those persons *who are awarded* damages or, in other words, to those persons to whom R.C. Chapter 2744 applies, which does not include subrogees. We know of no authority conferring a claim for relief upon an insurance company because it is obliged to fulfill its contract unless subrogation rights exist. To confer greater rights upon the insurer than possessed by the insured would be contrary to public policy. Accordingly, plaintiff's third assignment of error is not well-taken.

For the foregoing reasons, plaintiff's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

BOWMAN and FAIN, JJ., concur.

MIKE FAIN, J., of the Second Appellate District, sitting by assignment.