**PADILLA et al., Appellants,**

**v.**

**YMCA OF SANDUSKY COUNTY et al., Appellees.**

[Cite as *Padilla v. YMCA of Sandusky Cty.* (1992), 78 Ohio App.3d 676.]

Court of Appeals of Ohio,
Sandusky County.

No. S–91–15.

Decided March 13, 1992.

*Dennis E. Murray,* for appellants.

*John A. Coppeler,* for appellees.

*Per Curiam.*

This case is an appeal from a judgment of the Sandusky County Court of Common Pleas. On February 21, 1991, the trial court granted summary judgment in favor of appellee, the Sandusky County Park District, on the ground that the park district was immune from the wrongful death action brought by appellants, Maria Fortier (both individually and as administrator of the estate of Angel Padilla) and Alfred Fortier. For the reasons discussed below, we affirm the trial court's decision.

The facts of this case are as follows. White State Park is operated by the Sandusky County Park District. In 1987, the YMCA of Sandusky County leased a portion of White State Park from the park district in order to operate a summer day camp. Although the swimming area was not included in the lease, the park district permitted the YMCA day campers to use the swimming facilities at White State Park without charge.

On August 28, 1987, Angel Padilla, a YMCA day camper, drowned in the swimming area of White State Park. Angel Padilla's mother and stepfather,

Maria and Alfred Fortier, subsequently brought the present wrongful death action against the Sandusky County Park District. The trial court rendered summary judgment on the ground that the park district was immune from suit under the Political Subdivision Immunity Act, R.C. Chapter 2744.01.

It is from such judgment that the Fortiers raise the following two assignments of error:

"1. The trial court erred in ruling that O.R.C. Section 2744.01 granted immunity to defendant, Sandusky County Park District, because it was operating a 'proprietary' swimming/recreational facility as part of its sponsorship of a day camp.

"2. Ohio's Political Subdivision Immunity Act, O.R.C. Section 2744.01 *et seq.* violates the mandate of Article I, Section 16 of the Ohio Constitution in light of the unambiguous language waiving immunity and the clear intent as expressed by the delegates to the Ohio Constitutional Convention of 1912."

As their first assignment of error, the Fortiers argue that the trial court erred in finding that the Sandusky County Park District's operation of White State Park was a governmental function and, therefore, the park district was immune from suit under R.C. 2744.02.

R.C. 2744.01(C)(2)(u) extends immunity from liability to political subdivisions for several governmental functions including the following:

"The design, construction, reconstruction, renovation, repair, maintenance, and operation of any *park*, playground, playfield, indoor recreational facility, zoo, zoological park, bath, *or swimming pool or pond*, and the operation and control of any golf course." (Emphasis added.)

However, in *Amerson v. Dayton* (Sept. 19, 1989), Montgomery App. No. 11460, unreported, 1989 WL 109291, the court distinguished between the operation of a day camp within a public park and the operation of the park itself. The *Amerson* court held that the city of Dayton's operation of a day camp, even though located in a city-owned park, was different from the operation of the park itself. Therefore, because the operation of a day camp was not listed as a governmental function under R.C. 2744.01, the *Amerson* court concluded that Dayton was not immune from suit.

In the present case, the Fortiers argue that the Sandusky County Park District was operating a day camp and, therefore, was not immune from suit under *Amerson*. However, we find no evidence that the park district was operating a day camp and find *Amerson* inapplicable. The YMCA of Sandusky operated a day camp program for the summer of 1987. In order to operate its day camp, the YMCA had leased portions of White State Park, excluding the swimming area, from the Sandusky County Park District. We

do not find that such a lease agreement is any evidence that the park district operated the day camp.

The only other connection between the Sandusky County Park District and the YMCA day camp program was the fact that the park district permitted the day campers to use the White State Park swimming area free of charge. Again, we do not find that this gratuitous arrangement is evidence that the park district operated the day camp. The only evidence before this court establishes that the Sandusky County Park District operated the swimming area of White State Park, a function for which a political subdivision is immune from suit under R.C. 2744.01(C)(2)(u). Therefore, summary judgment is appropriate as a matter of law. See Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Accordingly, the Fortiers' first assignment of error is found not well taken.

■ As their second assignment of error, the Fortiers argue that the Political Subdivision Immunity Act, R.C. Chapter 2744, is unconstitutional. The Fortiers specifically argue that the Act violates Section 16, Article I of the Ohio Constitution, which reads as follows:

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

Essentially, the Fortiers argue that Section 16, Article I of the Ohio Constitution prohibits all sovereign immunity whether judicially or legislatively created. Therefore, the Fortiers argue that the Political Subdivision Immunity Act, to the extent it provides any immunity to any political subdivision from suit, is in conflict with the Ohio Constitution. The doctrine of sovereign immunity since the adoption of Section 16, Article I of the Ohio Constitution in 1912 has been given various interpretations by the Supreme Court of Ohio. The history of this development was stated in *Grange Mut. Cas. Co. v. Columbus* (1989), 49 Ohio App.3d 50, 52, 550 N.E.2d 524, 526–527, as follows:

"The doctrine of sovereign immunity prevailed in Ohio until 1982 when the Ohio Supreme Court in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 2 OBR 572, 575, 442 N.E.2d 749, 752, abolished judicially created sovereign immunity, stating that, since Ohio sovereign immunity for municipalities was judicially created, it could also be judicially abolished. The second paragraph of the Haverlack syllabus holds that the defense of sovereign immunity is not available in the absence of a statute providing immunity to a municipal corporation from an action for damages alleged to be caused by its negligence, in that case, negligence in the operation of its sewage treatment plant. Later, in *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178,

451 N.E.2d 787, municipal sovereign immunity was abolished in all actions for damages alleged to be caused by the tortious conduct of the municipality, in the absence of a statute providing immunity. The basic change was in the nature of the General Assembly action required. Under prior judicial decisions, sovereign immunity existed unless otherwise provided by statute. *Raudabaugh v. State* (1917), 96 Ohio St. 513, 118 N.E. 102; *Krause v. State* (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736. Under *Haverlack* and its progeny, sovereign immunity exists only if provided by statute.

"Subsequently, the General Assembly adopted R.C. Chapter 2744, governing, inter alia, municipal tort liability.

"* * * *

"In other words, sovereign immunity exists and a municipal corporation (or other political subdivision) is not liable unless R.C. 2744.02 provides otherwise * * *."

Further, in the syllabus of *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 550 N.E.2d 181, the Supreme Court of Ohio recently held that a portion of the Political Subdivision Immunity Act was "a constructional exercise of legislative authority under the Equal Protection Clauses of the United States and Ohio Constitutions."

The issue of whether the Political Subdivision Immunity Act violates Section 16, Article I of the Ohio Constitution has not been directly addressed by the previously cited Supreme Court of Ohio cases. However, if such an issue was truly viable, we believe it would have been raised at some point given the extensive litigation concerning the doctrine of sovereign immunity. Instead, it is clear that the Supreme Court of Ohio clearly regards Section 16, Article I of the Ohio Constitution as permitting the legislature to limit the liability of government. Therefore, this court does not find that the Political Subdivision Immunity Act violates Section 16, Article I of the Ohio Constitution. Accordingly, the Fortiers' second assignment of error is found not well taken.

On consideration whereof, the court finds substantial justice has been done the parties complaining, and the judgment of the Sandusky County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.