LAMB et al., Appellants,

v.

**VILLAGE OF QUINCY, Appellee.**

[Cite as *Lamb v. Quincy* (1993), 92 Ohio App.3d 592.]

Court of Appeals of Ohio,
Logan County.

No. 8-93-13.

Decided Dec. 28, 1993.

*Benjamin F. Yale,* for appellants.

*McCulloch, Felger, Fite & Gutmann Co., L.P.A.,* and *Jack L. Neuenschwander,* for appellee.

EVANS, Presiding Judge.

This is an appeal by Lois and Carlton Lamb from a judgment of the Court of Common Pleas of Logan County contesting the court's calculation of a damage award granted to them after they prevailed in a jury trial.

On April 4, 1990, Mrs. Lamb was in the village of Quincy when she stepped off the curb and into a hole in the street, causing her to fall and be injured. Approximately two years later, she and her husband filed a complaint against Quincy alleging negligence in the maintenance of the street. The case proceeded to a jury trial. and on April 21, 1993, the jury determined the Lambs had sustained $30,000 in damages. The jury apportioned the negligence, finding Quincy to have been sixty percent at fault in causing the harm and Mrs. Lamb to have been forty percent at fault. The trial court reduced the jury verdict by forty percent, resulting in an award of $18,000. The court then determined Mrs. Lamb had received $13,573.01 from Medicare and, pursuant to R.C. 2744.05, deducted this amount from the award against Quincy, entitling the Lambs to a final judgment of $4,426.99.

The Lambs challenge the court's determination of their award by asserting three assignments of error, the first of which reads:

"The trial court erred when it reduced the jury's verdict by the amount of reimbursements for medical bills received by Lois Lamb under Medicare pursuant to Ohio Revised Code § 2744.05."

Appellants contend the trial court's reduction of their award by the $13,573.01 paid out by Medicare effectively made Medicare the primary payer for her injuries and violated Section 1395y(b)(2), Title 42, U.S.Code, which intends for Medicare to be only a secondary payer. Appellants argue that the federal statute pre-empts R.C. 2744.05(B). We disagree with appellants' basic premise. The action of the trial court makes Medicare the primary payer only if Medicare cannot recover the funds from the tortfeasor.

The Supremacy Clause of Article VI of the federal Constitution provides Congress with the power to pre-empt state law. Instances when pre-emption occurs were identified by the Supreme Court in *Louisiana Pub. Serv. Comm. v. Fed. Communications Comm.* (1986), 476 U.S. 355, 368–369, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369, 381–382:

" * * * Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." (Citations omitted.)

In reviewing appellants' argument that R.C. 2744.05(B) is pre-empted by Section 1395y(b)(2), Title 42, U.S.Code, we must consider several aspects of Ohio's statute.

## A

### History and Purpose of R.C. 2744.05

In *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, the Supreme Court of Ohio abolished the judicially created doctrine of sovereign immunity in the absence of any statutory provisions enacted to limit the liability of municipal corporations. Subsequently, the General Assembly adopted R.C. Chapter 2744, providing the statutory framework for the liability of political subdivisions. R.C. 2744.02 provides that a political subdivision may be held civilly liable for personal injuries caused by an act or omission of the political subdivision. This section, however, is specifically made subject to the immunities set forth in R.C. 2744.05, which provides in pertinent part:

"Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function:

" * * *

"(B) If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits. * * * "

Essentially, R.C. 2744.05(B) provides for two things when an action is brought against a political subdivision to recover for injury, death, or loss to persons or property. First, the collateral source rule is abrogated as to the political subdivision.[1] The clear language of the statute requires the court to deduct the collateral benefits from the award recovered by the plaintiff. This conserves the fiscal resources of political subdivisions by providing the protection of sovereign immunity when a person injured by the negligence of the political subdivision is compensated by insurance or some other source of reimbursement. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182. The statute limits the recovery of injured parties to the amount of the award which has not been paid by other sources. Second, R.C. 2744.05(B) abolishes the insurer's right of subrogation against the political subdivision. Thus, a governmental tortfeasor is liable to pay the injured party only the amount not covered by insurance or some other source, and insurers are not permitted to recover the money paid to an insured by asserting subrogation rights against the governmental entity. *Grange Mut. Cas. Co. v. Columbus* (1989), 49 Ohio App.3d 50, 53, 550 N.E.2d 524, 527.

## B

### No Pre-emption of Ohio's Abrogation of the Collateral Source Rule

Congress enacted the Medicare Secondary Payer Act in an effort to reduce federal spending and to protect the financial well-being of the Medicare

---

1. Under the judicially created collateral source rule, a plaintiff's receipt of collateral benefits is deemed immaterial on the issue of damages. The receipt of such benefits is not to be admitted into evidence, nor is the amount of such benefits to be deducted from the plaintiff's damage award. *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 145–146, 590 N.E.2d 832, 835–836, citing *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235.

program by requiring that Medicare payments be secondary to all other sources of compensation. *Blue Cross & Blue Shield Assn. v. Sullivan* (D.D.C.1992), 794 F.Supp. 1166, 1168–1169. This statute has subsequently been amended numerous times to expand the extent to which Medicare is made a secondary payer. For example, the Omnibus Reconciliation Act of 1980 (Section 953, Pub.L. 96–499) amended this statute to make Medicare payments secondary to automobile, liability and no-fault insurance. *Id.*

■ The amended portion of Section 1395y(b)(2)(A), Title 42, U.S.Code, which pertains to collateral sources, reads:

"Payment under this subchapter [Medicare] may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

"(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

"(ii) payment has been made or can reasonably be expected to be made promptly * * * under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."

We do not find this federal statute to pre-empt Ohio's abrogation of the collateral source rule in suits against political subdivisions. Congress did not expressly state an intent to pre-empt state law, nor does Ohio's law interfere with an application of this portion of the federal statute. Both statutes can, and do, exist harmoniously without one doing damage to the other.

By reducing the award against the village, the trial court complied with R.C. 2744.05(B) and its intent to conserve the fiscal resources of political subdivisions. The congressional objective of Medicare being only a secondary payer was not harmed by this setoff.

C

Pre-emption of Ohio's Abrogation of an Insurer's Right to Subrogation

■ The second part of R.C. 2744.05(B) prevents insurers from asserting subrogation rights against governmental tortfeasors. *Grange Mut. Cas. Co. v. Columbus* (1989), 49 Ohio App.3d 50, 53, 550 N.E.2d 524, 527. This preclusion, however, is contrary to the statutory right of the federal government to be subrogated to the rights of an individual who received Medicare benefits as compensation for a tortious injury caused by some third party.

Section 1395y(b)(2)(B)(i), Title 42, U.S.Code provides that when payment for an injury can be made under a workers' compensation plan or under an automobile or liability insurance policy, Medicare payments are conditional upon reimbursement to the federal government. Section 1395y(b)(2)(B)(ii), Title 42, U.S.Code authorizes the United States to recover Medicare payments by bringing an action against "any entity" which is required or responsible to pay under a primary plan. Section 2651(a), Title 42, U.S.Code authorizes the federal government to bring an independent cause of action against tortfeasors such as the village of Quincy.[2] This statute states in part:

"In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment * * * to a person who is injured * * * under circumstances creating a tort liability upon some third person * * * to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person * * * has against such third person * * *."

Because these statutes and regulations specifically provide for the federal government to be subrogated to any right or claim that an injured party may assert against a tortfeasor, we conclude that the portion of R.C. 2744.05(B) abrogating the subrogation rights of insurers against political subdivisions has been pre-empted by the federal government's statutory right to seek reimbursement for Medicare benefits received by the injured party. This holding leaves R.C. 2744.05(B) intact as against private insurers. However, in order to comply with the congressional intent of allowing the federal government to bring an action against third-party tortfeasors for reimbursement of Medicare benefits, the federal law must prevail. There is no provision in the federal law to prevent the federal government from collecting against a political subdivision of a state.

■ Although we agree with appellants' argument that R.C. 2744.05(B) is pre-empted, insofar as it affects the subrogation rights of the federal government, we do not find the trial court to have erred by reducing the jury's verdict by the amount which may have to be reimbursed to the federal government. Failure to deduct the amount paid by Medicare makes both Medicare and Quincy primary

2. Sections 411.24(e) and 411.26(a), Title 42, C.F.R. also provide that the Health Care Financing Administration ("HCFA") has a direct right of action to recover Medicare benefits from any entity responsible for making primary payments and is subrogated to any individual entitled to payment from a third-party tortfeasor.

payers should the federal government decide not to enforce its subrogation rights. This is the result which R.C. 2744.05(B) and Section 1395y(b)(2), Title 42, U.S.Code were specifically intended to avoid. Moreover, failure to make the deduction would violate that part of R.C. 2744.05(B) which has not been preempted by federal law. We find no compelling reason or authority to allow appellants to be the stakeholder of the money which the federal government may require be paid back to Medicare.

Appellants' first assignment of error is overruled.

Appellants' second assignment of error states:

"The trial court erred when it held that the United States government was estopped from bringing any claim for reimbursement from the tortfeasor for the injuries of Lois Lamb due to a failure of Nationwide Insurance to answer a third-party complaint."

Appellants argued to the trial court that the reduction in the award was inappropriate because they were subject to a claim for subrogation by the federal government. The trial court disagreed, noting that Medicare and its third-party payer, Nationwide, were joined as parties to the action but failed to answer. The court, therefore, found that Medicare is estopped from seeking reimbursement from appellants. We disagree with the trial court's conclusion.

In response to a motion by appellee, the trial court entered an order joining "MEDICARE/Nationwide Mutual Insurance Company" as a party to the action.[3] However, Section 421.5(b), Title 42, C.F.R. indicates that the HCFA, an agency of the Department of Health and Human Services ("HHS"), is the real party in interest in any litigation involving the administration of the Medicare Act. *United States v. Sosnowski* (W.D.Wis.1993), 822 F.Supp. 570, 573. There is nothing in the record to indicate proper service was made upon the federal government. Notice of the joinder and a copy of the complaint were sent by the court to MEDICARE/Nationwide Mutual Insurance Company. This, however, is not the same as providing notice to HCFA, the Secretary of HHS, or the United States Attorney General and the United States attorney for the district in which the action was brought. Therefore, the federal government was not properly joined as a party and the trial court erred by finding it estopped from seeking

---

**3.** HCFA does not process and pay Medicare claims, but rather contracts with private insurance companies to do so. *See* Sections 1395h and 1395u, Title 42, U.S.Code. Nationwide Mutual Insurance Company was the intermediary through which Medicare made payments to Mrs. Lamb's health care providers.

reimbursement for the funds paid out by Medicare on the grounds that Medicare had been made a party to this action.

■ Moreover, estoppel is generally not available against the federal government. See, *e.g.*, *Schweiker v. Hansen* (1981), 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685. The Seventh Circuit Court of Appeals has identified several factors that must be established before the government is estopped from asserting its rights:

"First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury." *Woodstock/Kenosha Health Ctr. v. Schweiker* (C.A.7, 1983), 713 F.2d 285, 290, citing *Portmann v. United States* (C.A.7, 1982), 674 F.2d 1155, 1167.

The Sixth Circuit, while reciting the rule that estoppel is not available against the government, appears to also require some "affirmative misconduct" by the government which threatens to work a serious injustice. *Giles v. Carlin* (E.D.Mich.1986), 641 F.Supp. 629, 639, citing *Housing Auth. of Elliott Cty. v. Bergland* (C.A.6, 1984), 749 F.2d 1184, 1190.

Under the facts of the instant case, we conclude estoppel against the government would not apply. The elements identified in *Woodstock/Kenosha* have not been established nor does it appear that all of them could be successfully demonstrated. There, likewise, has been no showing of affirmative misconduct by the government.

■ Appellants' second assignment of error is well taken to the extent that the federal government is not estopped from asserting its rights for reimbursement of the funds paid by Medicare. This, however, does not mean the damage award was not subject to a reduction pursuant to R.C. 2744.05(B).

Appellants' final assignment of error reads:

"The trial court erred when it allocated the comparative negligence percentages (Ohio Rev.Code § 2315.19) before deducting collateral sources. (Ohio Rev.Code § 2744.05)."

■ Appellants argue that the collateral benefits paid by Medicare should be subtracted from the $30,000 award assessed by the jury before factoring in the comparative negligence. We disagree.

R.C. 2315.19(B)(4) requires the jury to assess total damages and determine each party's percentage of negligence. The trial court is then required to diminish the total amount of the compensatory damages that would have been recoverable by an amount that is proportionately equal to the percentage of negligence that is attributable to the complainant. R.C. 2315.19(C). This calculation provides the award against the political subdivision which may be recovered by the claimant. Then, the court must deduct the benefits received by the complainant from insurance or any other source as required by R.C. 2744.05(B). Failure to follow this procedure contravenes the legislative intent of R.C. 2744.05(B) to conserve fiscal resources of political subdivisions.[4]

Appellants also argue that the portion of Mrs. Lamb's award intended to compensate her for pain and suffering was improperly reduced by the court's applying the comparative negligence percentages before subtracting the collateral benefits. Even if this court were to accept appellants' argument, there is no way to isolate the amount awarded for pain and suffering to permit an application of appellants' theory. There is nothing in the record to show how much of the award was intended by the jury as compensation for pain and suffering versus medical expenses or Mr. Lamb's claim for loss of consortium.

Appellants' third assignment of error is overruled.

Having found no error prejudicial to the appellants herein, in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.

---

4. This interpretation is in accord with the holding in *Jeffers v. Phillips Ready Mix* (1991), 72 Ohio App.3d 62, 593 N.E.2d 443, where the Court of Appeals for Greene County interpreted R.C. 2317.45(B) and found that collateral benefits were properly deducted from the compensatory damages assessed by the jury *after* the trial court reduced the damages by the percentage of the plaintiff's comparative negligence.