This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellants, James Fabian (hereinafter "Fabian") and his wife, appeal the trial court's summary judgment dismissing their claims against the Appellees, City of Steubenville (hereinafter "City") and Rocco Augustine (hereinafter "Augustine"). For the following reasons, we conclude the trial court properly granted summary judgment for the City and Augustine and affirm its decision.
On May 1, 1998, Fabian was an employee of the City and had been for approximately six years with the last four as an Assistant Operator at the wastewater treatment plant. Augustine was the Assistant Superintendent of the Steubenville Wastewater Treatment Plant (hereinafter "Plant") and had been in that position for approximately five years.
On that day, Fabian and his supervisor, Jesse Merino (hereinafter "Merino"), were working in a room located next to a large storage area containing chlorine gas tanks when the two began to smell chlorine. Merino equipped himself with a self-contained breathing apparatus (hereinafter "SCBA") and entered the room where the tanks were stored to stop the flow of the gas. After a couple of minutes, a bell went off in Merino's SCBA and Fabian, believing Merino was in some danger, rushed into the tank storage area. Chlorine gas then overcame Fabian who had to be assisted out of the area by Merino. Fabian was hospitalized for his injuries.
Fabian and his wife filed suit sounding in intentional tort, claiming the appellees knew with a substantial certainty the injury to Fabian would occur and Augustine's actions occurred either outside the scope of his employment or in a reckless or wanton manner. Both parties filed motions for summary judgment, with the trial court granting appellees' motion, denying appellants' motion and ordering the case dismissed. The trial court found the City was immune from suit under R.C. 2744.01 and Fabian had produced no evidence on the issues of whether Augustine acted outside the scope of his employment or acted in a wanton and reckless manner.
Fabian appeals the trial court's grant of summary judgment in favor of the City and Augustine and denying their cross-motion, asserting the trial court erred by granting summary judgment dismissing the case because: 1) R.C. 2744 is inapplicable to the case at hand; 2) R.C.2744.02(B)(2) is unconstitutional, and; 3) a genuine issue of material fact exists as to whether Augustine's conduct was wanton and reckless. For the following reasons, these assignments of error are meritless and the judgment of the trial court is affirmed.
The determination as to whether a political subdivision is immune from suit is a question of law properly determined by a court prior to trial and preferably on a motion for summary judgment. Conley v. Shearer
(1992), 64 Ohio St.3d 284, 292, quoting Donta v. Hooper (C.A.6, 1985),774 F.2d 716, 719, certiorari denied (1987), 483 U.S. 1019,107 S.Ct. 3261, and citing Roe v. Hamilton Cty. Dept. of Human Serv. (1988),53 Ohio App.3d 120, 126. When reviewing a trial court's grant of summary judgment, we apply the same standard used by the trial court. Parenti v.Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Our review is, therefore, de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390.
R.C. 2744 provides immunity from civil suit to Ohio's political subdivisions. As a general rule, political subdivisions are immune from any civil action. R.C. 2744.02(A). However, the statutory scheme has built in a few exceptions to the rule in R.C. 2744.02(B). If a particular case falls within those exceptions, immunity can be reinstated if the political subdivision can successfully argue one of the defenses contained in R.C. 2744.03 applies. Cater v. City of Cleveland (1998),83 Ohio St.3d 28. However, general exceptions to the rule may be found in R.C. 2744.09 which takes certain types of actions out of the purview of R.C. 2744 entirely:
 "[R.C. 2744] does not apply to, and shall not be construed to apply to, the following: * * *
 (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision;
 (C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment." R.C. 2744.09.
Fabian argues R.C. 2744.09 makes Chapter 2744 inapplicable to the case at bar for two reasons: 1) the injuries arose out of his employment relationship with the City and, therefore, the action falls outside the scope of Chapter 2744 via R.C. 2744.09(B); and, 2) this suit deals with the conditions of his employment and, therefore, the action falls outside the scope of Chapter 2744 via R.C. 2744.09(C).
This court has already addressed whether intentional torts may arise out of the employment relationship under R.C. 2744.09(B) in Abdalla v.Olexia (Oct. 6, 1999), Jefferson App. No. 97-JE-43, unreported, where we rejected this proposition for two reasons, the first being plaintiff did not assert an R.C. 2744.09(B) argument before the trial court. Secondly, we relied upon a long line of cases which held:
 "* * * that political subdivisions are immune from intentional tort claims as R.C. § 2744.02(B) contains no specific exceptions for intentional torts and an intentional tort occurs outside of the employment relationship and does not arise from such a relationship. Ventura v. City of Independence (May 7, 1998), Cuyahoga App. No. 72526, unreported; Wilson v. Stark Cty. Dept. of Human Services (1994), 70 Ohio St.3d 450, 639 N.E.2d 105; Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, 576 N.E.2d 722; Ellithorp v. Barberton City School District Board of Education (July 9, 1997), Summit App. No. 18029, unreported, Farra v. Dayton (1989), 62 Ohio App.3d 487, 576 N.E.2d 807. As Appellant argues Appellees' intentional conduct in allegedly misinforming him of his rights regarding legal representation and in the delays in deciding the issue of reimbursement, R.C. § 2744.09(B) has no application." Id at 11.
Appellate courts have unanimously agreed with this position for "to allow such claims as appellant's would frustrate the purpose of both Chapter 2744 and laws providing for collective bargaining and workers' compensation." Ventura, supra at 8. Being faithful to the principle ofstare decisis, we must reaffirm the well established proposition that intentional torts cannot arise out of the employment relationship.
The rule that an intentional tort cannot arise out of the employment relationship originated with Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608. The issue before Blankenship
was whether an intentional tort could arise out of the employment relationship for the purposes of workers' compensation litigation. When interpreting the statute the court paid special attention to the rule of construction written into the chapter covering workers' compensation, namely the workers' compensation chapter "will be liberally construed in favor of employees and the dependents of deceased employees." R.C.4123.95. The court found "[n]o reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment." Id. at 613. Therefore, it held that by its nature an intentional tort cannot arise out of the employment relationship and suits based on intentional tort claims would not be barred by workers' compensation legislation. These concepts were further refined in Jones v. VIP Development Co. (1984),15 Ohio St.3d 90 (Risk must be substantially certain for intent to exist); Van Fossen v. Babcock Wilcox Co. (1998), 36 Ohio St.3d 100
(Employer must have knowledge of the substantial certainty for intent to exist); Fyffe v. Jeno's, Inc. (1991), 59 Ohio App.3d 115 (Employer must have knowledge); and finally Brady v. Safety-Kleen Corp. (1991),61 Ohio St.3d 624.
In Brady, the Ohio Supreme Court found an attempt by the legislature to incorporate intentional torts into the workers' compensation system unconstitutional. The court held "[a] legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the `* * * comfort, health, safety and general welfare of all employees * * *.'"Brady at 633 citing Section 34, Article II of the Ohio Constitution. Furthermore, the legislature cannot incorporate intentional torts into the workers' compensation scheme because intentional torts by their nature cannot be in the scope of employment. Id. at 633-34.
Fabian argues the public policy behind the Blankenship line of cases is to afford greater protection to employees against the conduct of their employers and this policy is turned on its head when the same rule is applied to this chapter of the Revised Code. He argues holding intentional torts cannot arise out of the employment relationship will give less protection to employees and "[a]ffording an employer immunity for his intentional behavior certainly would not promote [a safe and injury-free work] environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly." Blankenship at 615. Therefore, he urges the court to apply the "plain meaning" of the term "employment relationship" found in R.C. 2744.09(B) rather than the technical meaning given to the phrase by the courts in the workers' compensation context.
Similarly, Fabian argues R.C. 2744.09(C) releases this claim for intentional tort out of the mandates of Chapter 2744. This subsection allows for an employee of a political subdivision to bring an action against his employer regarding the "wages, hours, conditions, or other terms of his employment." Fabian asserts the allegations in the complaint go to the safety condition present at the time of his injuries and, therefore, R.C. 2744.09(C) excepts this case from R.C. 2744. The City argues that this subsection exists to maintain the integrity of the collective bargaining system much as R.C. 2744.09(B) exists to maintain the integrity of the workers' compensation system.
Chapter 4117 of the Revised Code is the Public Employees Collective Bargaining Act. Under that Chapter, all subjects which "affect wages, hours, terms and conditions of employment," require collective bargaining. Deeds v. City of Ironton (1988), 48 Ohio App.3d 7, 11. This is virtually identical language to that contained in R.C. 2744.09(C) which allows an employee to sue when the suit deals with "wages, hours, conditions, or other terms" of employment. When interpreting this language in the collective bargaining context, courts have held things such as residency requirements are conditions of employment. St. Bernardv. State Emp. Rel. Bd. (1991), 74 Ohio App.3d 3. Both the language of the statute and the court decisions make clear that the term "conditions of employment" refers to the conditions an employee must meet to maintain employment, not the conditions an employee works within.
Fabian argues for a "plain meaning" reading of R.C. 2744.09(B) and (C), instead of applying the technical meaning of the terms. As discussed above, these statutory subsections implicitly refer to other chapters of the Revised Code where courts have defined their meanings. "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42. We must apply the meanings given to these phrases in the workers' compensation and collective bargaining to the present context as well instead of the plain meaning advocated by Fabian. Therefore, neither R.C. 2744.091(B) or (C) strips the City of immunity from Fabian's intentional tort claims. Fabians's first assignment of error is meritless.
Fabian's second assignment of error argues R.C. 2744.02(B)(2) violates the Equal Protection Clauses of both the Ohio and United States Constitutions because the distinction between negligent acts and intentional acts creates a class which is discriminated against for no rational basis. R.C. 2744.02(B)(2) provides political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. R.C. 2744 makes no such exception for victims of intentional torts.
Statutes enacted in Ohio are presumed to be constitutional unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional. State v. Williams (2000), 88 Ohio St.3d 513, 521. While the General Assembly also has the power to define the contours of the state's liability, it must operate within the confines of equal protection and due process. Adamsky v. Buckeye Local School Dist. (1995),73 Ohio St.3d 360, 362. Distinctions among individuals or groups is sometimes an inevitable result of the operation of a statute. The mere fact that a statute differentiates does not mean that the statute must be unconstitutional. Id. at 362. The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis.Williams at 530. The standards for determining violations of equal protection are essentially the same under state and federal law. Am.Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. StateUniv. (1998), 83 Ohio St.3d 229, 233.
 "Under the Equal Protection Clause, a legislative distinction need only be created in such a manner as to bear a rational relationship to a legitimate state interest. Clements v. Fashing (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515. These distinctions are invalidated only where `they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.' Id.; see, also, Heller v. Doe (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 271; Am. Assn. of Univ. Professors
[at] 58, 717 N.E.2d 286, 290. This rational basis analysis is discarded for a higher level of scrutiny only where the challenged statute involves a suspect class or a fundamental constitutional right." Williams
at 530.
As the Ohio Supreme Court held in Adamksy, "The right to sue a political subdivision has been held not to be a fundamental right. Moreover, this case does not involve a suspect class, which has been traditionally defined as one involving race, national origin, religion, or sex." Id. at 362 (citations omitted). Therefore, when assessing whether R.C. 2744.02(B)(2) violates equal protection we must use the rational basis test, i.e. the statute must bear a rational relationship to a legitimate governmental interest. Id. In a rational basis analysis, we must uphold the statute unless the classification is wholly irrelevant to achievement of the state's purpose. Menefee v. Queen City Metro
(1990), 49 Ohio St.3d 27, 29.
Whether or not R.C. 2744.02(B)(2) is unconstitutional for violating equal protection is a case of first impression. Fabian argues R.C.2744.02(B)(2) arbitrarily distinguishes between those injured by the intentional acts of a political subdivision employer and those injured by the intentional acts of a private employer. However, he has misidentified the class at issue. R.C. 2477.02 does not impermissibly draw a distinction between sovereign tortfeasors and private tortfeasors. Lewisv. City of Cleveland (1993), 89 Ohio App.3d 136. The class protected by Chapter 2744 is political subdivisions. Grange Mut. Cas. Co. v. City ofColumbus (1989), 49 Ohio App.3d 50, 54.
The Ohio Supreme Court has already held Chapter 2744 does not violate equal protection because it has a legitimate government interest in preserving the fiscal integrity of its political subdivisions. Fabrey v.McDonald Village Police Dept. (1994), 70 Ohio St.3d 351, 353 citingShapiro v. Thompson (1969), 394 U.S. 618, 633, 89 S.Ct. 1322, 1330. The State may make a rational determination to limit its liability in certain circumstances in order to advance that legitimate state interest.Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 669.
Rather than disallowing a particular class from bringing actions against Ohio's political subdivisions, R.C. 2744.02(B)(2) allows a particular class to bring an action against those political subdivisions. "When the state consents to be sued, it may qualify and draw perimeters around that granted right without violating * * * equal protection. When a state has the power to give, it may give only part and limit that which is granted." Grange Mut. Cas. Co. v. City of Columbus (1989),49 Ohio App.3d 50, 52. Furthermore, an "equal protection review does not require us to conclude that the state has chosen the best means of serving a legitimate interest, only that it has chosen a rational one."Fabrey at 354. Clearly, there is a rational relationship between the preservation of fiscal soundness and not allowing parties to bring actions against the state. Therefore, R.C. 2744.02(B)(2) is constitutional and Fabian's second assignment of error is meritless.
Fabian's third assignment of error asserts the trial court improperly granted the appellees' motion for summary judgment because a genuine issue of material fact exists as to whether Augustine acted in a wanton and reckless manner. Summary judgment is appropriate only where no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Hollimanv. Allstate Ins. Co. (1999), 86 Ohio St.3d 414, 415.
As stated above, the Political Subdivision Tort Liability Act has a three-tiered analysis to decide whether a political subdivision is immune to an action. The first step is the general immunity found in R.C.2744.02(A). If this applies, then the exceptions found in R.C. 2744.02(B) could create liability. Finally, R.C. 2744.03 provides the political subdivision with defenses to those exceptions, shielding the political subdivision once more. Furthermore, R.C. 2744.03 cannot be used to establish liability independent of R.C. 2744.02. Cater, supra at 24, 32. Therefore, even if Augustine did act wantonly and recklessly, Fabian would not be able to recover from the City because the city would still be immune from suit pursuant to R.C. 2744.02(A).
Fabian also asserts an independent cause of action against Augustine. Because Fabian was injured in the course of his employment, he cannot sue Augustine for any injury arising out of his employment. R.C. 4123.741. The Ohio Supreme Court has consistently held in Blankenship and its progeny that wanton and reckless conduct does not give rise to an intentional tort and, therefore, wanton and reckless conduct may arise out of an employment relationship.
 "`(T)he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classified as an intentional wrong.'"
 Blankenship, supra at 621 quoting Prosser on Torts (1971), Section 8, page 32 (footnote omitted). Therefore, even if Augustine did act recklessly and wantonly, Fabian still could not recover from Augustine because Augustine would be immune pursuant to R.C. 4123.741. His sole avenue for recovery is via the Workers' Compensation scheme.
For these reasons, it would be improper for this court to address the substance of Fabian's third assignment of error.
For the foregoing reasons, Fabian's assignments of error are meritless and the judgment of the trial court is affirmed.
DONOFRIO, J. and WAITE, J., Concurs.